STATE of Wisconsin, Plaintiff-Respondent,

v.

John T. TROCHINSKI, Jr., Defendant-Appellant-Petitioner.

Supreme Court

*No. 00–2545–CR. Oral argument February 6, 2002.—Decided May 30, 2002.*

2002 WI 56

(Also reported in 644 N.W.2d 891.)

For the defendant-appellant-petitioner there were briefs and oral argument by *James L. Fullin,* assistant state public defender.

For the plaintiff-respondent the cause was argued by *Daniel J. O'Brien,* assistant attorney general, with whom on the brief was *James E. Doyle,* attorney general.

¶ 1. N. PATRICK CROOKS, J. John T. Trochinski, Jr. (Trochinski) seeks review of an unpublished court of appeals' decision affirming the circuit court's decision rejecting Trochinski's argument that Wis. Stat. § 948.11(2)(a) (1997–98)[1] is unconstitutional, and rejecting Trochinski's postconviction motion seeking to withdraw his no contest plea. Based on allegations that Trochinski gave nude pictures of himself to a fifteen-year-old girl and a seventeen-year-old girl, Trochinski was originally charged in Waushara County Circuit Court with two counts of exposing minors to harmful materials, contrary to § 948.11(2). Trochinski challenged the constitutionality of § 948.11(2), but the circuit court denied the motion. Pursuant to a plea agreement, Trochinski then entered a no contest plea to one count of exposing a minor to harmful materials in violation of § 948.11(2). After sentencing, Trochinski filed a postconviction motion seeking to withdraw his plea, alleging that at the time he entered his plea he did not understand the definition of an element of the offense—"harmful to children." The circuit court denied Trochinski's motion and the court of appeals subse-

[1] All references to the Wisconsin Statutes are to the 1997–98 version unless otherwise noted.

Wisconsin Stat. § 948.11(2)(a) states in full:

(2) CRIMINAL PENALTIES. (a) Whoever, with knowledge of the nature of the material, sells, rents, exhibits, transfers or loans to a child any harmful material, with or without monetary consideration, is guilty of a Class E felony.

42

quently affirmed. The court of appeals also rejected Trochinski's constitutional challenge to § 948.11(2).

¶ 2. Trochinski is now before this court with the same arguments. Trochinski contends that he should be able to withdraw his no contest plea because he did not understand the meaning of "harmful to children" under Wis. Stat. § 948.11(2). He further argues that neither the written plea questionnaire nor the plea colloquy establish that he understood the elements of the offense to which he was pleading. Lastly, Trochinski renews his constitutional argument, claiming that § 948.11(2) is facially unconstitutional because it imposes strict liability for constitutionally protected expression.

¶ 3. We reject both of Trochinski's arguments and affirm the court of appeals' decision. First, we conclude that Trochinski has failed to establish a prima facie case that his plea was involuntary. Based on the standard set forth in *State v. Bangert,* 131 Wis. 2d 246, 389 N.W.2d 12 (1986), we conclude that the signed plea questionnaire and waiver of rights form, together with the plea colloquy, establish that Trochinski knew and understood the elements of the offense to which he was pleading.

¶ 4. We similarly reject Trochinski's constitutional challenge to Wis. Stat. § 948.11(2). Based on this court's previous decisions, we conclude that the scope of conduct criminalized in § 948.11(2) anticipates face-to-face contact between the defendant and the child. Accordingly, because this personal interaction allows the defendant reasonably to ascertain the victim's age, the State can impose on the defendant the risk that the victim is a child.

43

I

¶ 5. The facts, as stated in the probable cause portion of the complaint and relied on by the circuit court, are not in dispute. On December 18, 1998, John T. Trochinski, Jr. entered the Amoco station in Poy-Sippi, Wisconsin, and had a conversation with Jill L., an employee of the gas station. At this time, Jill was seventeen years, three months old. During their conversation, Trochinski gave Jill an envelope containing a set of ten nude photos of himself, with his penis exposed. In addition, Trochinski gave her a copy of a letter from Playgirl, indicating that the nude photos of Trochinski would be published in the magazine,[2] and a personal letter that he wrote to Jill "inviting her to review the photographs."

¶ 6. In the two-page personal letter, which the circuit court relied on at sentencing, Trochinski wrote, among other things,

> If you decide to keep these photos then please keep them in a safe place out of reach of children—If you decide not to keep them then just wait 'til you see me again okay—In all honesty I do hope you'll keep them 'cause they mean alot to me and as long as you keep these photos I'll make sure I get you a copy of the professional ones which I am waiting on getting back[.]
>
> . . .
>
> Well, I guess I'll close for now in the hopes that you will keep these photos. If at all possible would you please write back and let me know what you think of these photos and also let me know if you would like a copy of the professional photos as well!

---

[2] Although not relevant to the outcome of this case, we question the authenticity of the alleged letter from Playgirl.

44

The letter also included Trochinski's address and phone number, with the note, "Call Anytime."

¶ 7. Trochinski was subsequently charged with two counts of exposing minors to harmful materials, contrary to Wis. Stat. § 948.11(2)(a). One count involved seventeen-year-old Jill L., and the other count involved a fifteen-year-old girl.[3] Trochinski filed a pretrial motion to dismiss the charges, alleging that under *State v. Zarnke*, 224 Wis. 2d 116, 589 N.W.2d 370 (1999), § 948.11(2) is unconstitutional. The circuit court held a hearing on the motion on June 7, 1999,[4] and at the conclusion of the hearing the court denied Trochinski's motion.

¶ 8. On June 9, 1999, an information charged Trochinski with the same two counts of exposing minors to harmful materials, as alleged in the complaint, but also charged Trochinski as a repeat offender under Wis. Stat. § 939.62(2)[5]. Trochinski entered a not guilty plea to both counts.

---

[3] We do not discuss the facts relating to the charge involving the fifteen-year-old girl because that charge was eventually dismissed pursuant to the plea agreement.

[4] The hearing was originally scheduled for April 30, 1999, but the court adjourned the hearing to notify the Attorney General of the constitutional challenge to the statute.

[5] Wisconsin Stat. § 939.62(2) states:

(2) The actor is a repeater if the actor was convicted of a felony during the 5–year period immediately preceding the commission of the crime for which the actor presently is being sentenced, or if the actor was convicted of a misdemeanor on 3 separate occasions during that same period, which convictions remain of record and unreversed. It is immaterial that sentence was stayed, withheld or suspended, or that the actor was pardoned, unless such pardon was granted on the ground of

¶ 9. On November 15, 1999, pursuant to a plea agreement with the State, Trochinski entered a no contest plea to one count of exposing a minor to harmful materials, contrary to Wis. Stat. § 948.11(2). The terms of the plea agreement were as follows: (1) Trochinski would plead guilty to Count 2 of the information (relating to Jill L.) and the State would dismiss Count 1 (relating to the fifteen-year-old girl) but have it read into the record for purposes of sentencing; and (2) Trochinski would be free to argue for whatever sentence he deemed appropriate, including probation, and the State would recommend a six-year prison sentence for Count 2, as enhanced by the repeater allegation. By entering into the plea agreement, Trochinski reduced his total incarceration exposure from sixteen to eight years.

¶ 10. At the plea hearing, Trochinski and his attorney submitted a signed plea questionnaire and waiver of rights form. On the plea form, Trochinski indicated, by signing his initials, that he understood the plea agreement and the constitutional rights he was waiving by entering into the plea agreement. The form also indicated that Trochinski knew the elements of the offense to which he was pleading no contest. The form listed the elements of Wis. Stat. § 948.11(2)(a) as follows:

> (1) You exhibited harmful material to a child. (2) You had knowledge of the nature of the material. (3) The child had not attained the age of 18 at the time of the alleged offense. (4) That you were previously convicted of a felony during the 5–year period preceding this offense excluding the time you were incarcerated.

innocence. In computing the preceding 5–year period, time which the actor spent in actual confinement serving a criminal sentence shall be excluded.

On the plea form, Trochinski also indicated that he was giving up his right to present any defense to the charge, and that he was satisfied with the legal advice and assistance he received from his attorney.

¶ 11. After receiving the written plea questionnaire and waiver form, Judge Lewis R. Murach engaged Trochinski in a personal plea colloquy on the record.[6] In response to questions from the court, Trochinski indi-

[6] Because we rely on the personal plea colloquy to determine whether Trochinski knowingly, intelligently and voluntarily entered into the plea agreement, we lay out the relevant portions of the colloquy.

> THE COURT: All right. Mr. Trochinski, I have before me the plea questionnaire and waiver of rights form that would appear to have your signature on it. Did you sign the form?
>
> THE DEFENDANT: Yes, I did.
>
> THE COURT: And before signing it, did you go over all of the matters on that form with your attorney?
>
> THE DEFENDANT: Yes, I did.
>
> THE COURT: Did you understand all of the matters on the form?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Now, the information contained on the form by the boxes checked, the things initialed, the information communicated by this form, is that information truthful?
>
> THE DEFENDANT: Yes.
>
> THE COURT: And I can rely upon it to be so?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Now, I'm not going to go over all of the things on the form with you. That's the purpose of having the form so that you can meet with your attorney; that you can go over all of the matters on the form; that you can discuss all of the matters and be sure that nothing is left out; and that you can do that outside of the pressures that are sometimes present in courtrooms.

47

cated that he understood all of the matters on the form, including the elements of the offense, that the information communicated by the form was truthful, and that

I do want to touch bases though with certain constitutional rights. You understand that if you plead no contest to a charge, I'm going to find that you are guilty of this charge?

THE DEFENDANT: Yes, I understand that.

THE COURT: And the format is that if the State claims that you engaged in particular criminal acts on a particular date, time, and place and that if your official plea is that you are not contesting or disputing that claim, then the Court would take the claim as so looking just to be sure that there is a factual basis for it. You understand that?

THE DEFENDANT: Yes, I do.

THE COURT: And you appreciate that looking for a factual basis to support a plea is something a great deal different than hearing and evaluating evidence at a trial and deciding elements of a crime beyond a reasonable doubt. You understand that difference?

THE DEFENDANT: Yes, I do.

THE COURT: Now, if you enter a no contest plea, then you will be waiving and giving up your right to remain silent, your right to testify, your right to a 12 person jury trial, your right to have a unanimous verdict, your right to confront your accuser in court, cross-examine that person under oath, right to call witnesses on your own behalf, and the right to prove beyond a reasonable doubt each element of the offense to which you are charged. You understand that that would be the case?

THE DEFENDANT: Yes, I do.

THE COURT: And by elements of the offense, the Court is talking about the things that has [sic] to be proven in order to obtain a conviction. We've already addressed the repeater aspect, so I'm not going to repeat that, but Count 2 says that on *or about December 18th of 1998, that you transferred material to a child, that you had knowledge of the nature of the material, that the material was harmful material, that being a picture of yourself depicting nudity.* You understand all of those elements?

THE DEFENDANT: *Yes, I do.*

48

he understood the various rights he was waiving. The court relied on the facts alleged in the complaint as the factual basis for the plea,[7] and then stated that it was satisfied that Trochinski understood his rights and that he was acting knowingly, intelligently and voluntarily. Finally, the court accepted Trochinski's no contest plea and entered a judgment of conviction for the crime of exposing a child to harmful materials.

¶ 12. After accepting Trochinski's plea, the circuit court immediately proceeded to sentencing. The court heard testimony, and then sentenced Trochinski to six years in prison.

¶ 13. Trochinski subsequently filed a postconviction motion seeking to withdraw his no contest plea on grounds that he did not understand the "harmful to

---

THE COURT: And by child, a child is referencing someone who had not as yet reached the age of 18 years. You understand that's what we mean by child?

THE DEFENDANT: Yes, I do.

THE COURT: All right. Then to the charge contained in Count 2 of the information, the count that says that on or about December 18th of 1998 unlawfully *with knowledge of the nature of the material,* that you transferred to a child, that being J.A.L., a female white child with a birth date of September 30, 1981, *harmful materials, to wit a picture of yourself depicting nudity* contrary to "948.11(2)(a)" of the Wisconsin Statutes, a Class E Felony crime, that with the enhancement would subject you to a fine not to exceed $10,000, imprisonment not to exceed eight years, or both. To that charge, what is your plea.

THE DEFENDANT: No contest. (Emphasis added.)

[7] Specifically, the court stated: "The Court is satisfied that the record, especially the probable cause basis of the complaint, does set forth a factual basis sufficient to support the plea that is offered." We note that the facts stated in the probable cause portion of the complaint, encompass those facts stated here in paragraph five.

children" element of Wis. Stat. § 948.11(2)(a). Trochinski also renewed his facial constitutional challenge to the statute. On September 6, 2000, the court held a postconviction hearing. During the hearing, Trochinski testified that he understood the elements of the offense, but did not understand what was going to have to be proven to be convicted.[8] He further testified about several discussions with his trial attorney, including the

---

[8] Specifically, after his defense attorney read the elements of Wis. Stat. § 948.11(2)(a) as listed on the plea waiver form, Trochinski testified as follows:

> Q: And did you understand at the time you signed [the plea waiver form] that those were the matters that you were admitting, that these were the elements of the offense?
>
> A: *I understood that they were the elements.* I didn't understand what was going to have to be proven to be convicted.
>
> Q: Okay. That's pretty close to the same thing. An element is something that has to be proven for you to be convicted. Now, when you initialed the box that says you exhibited harmful material to a child, what was your understanding of what harmful material meant?
>
> A: *Exactly what I was told by my attorney, that it was harmful material and in photos.*
>
> Q: It was a photograph. It was a photograph of yourself without any clothes on; is that right?
>
> A: Correct.
>
> Q: And did you and your attorney ever discuss whether a mere picture of a nude was harmful to children?
>
> A: No. *I recall it being discussed that it wasn't considered harmful material because I wasn't erect and I was not touching myself.*
>
> Q: You talked about that with Mr. Haase?
>
> A: Yes, I did.
>
> Q: And his explanation to you was you have to be erect or touching yourself in order for it to be harmful?

fact that there would be jury instructions if the case were taken to trial.[9] On cross examination, Trochinski admitted that at the time he pled no contest he had knowledge of the nature of the material, that it was harmful, and that the photos are totally inappropriate for children.[10] After hearing arguments by counsel, the court concluded that Trochinski had not met his burden of proving a prima facie case that his plea was not

A: If I recall, his explanation was, I can't believe they even got it in court. I talked to other attorneys in other counties, and they could not see any point in this.

Q: All right. So in your personal opinion mere nudity was not sufficient for a prosecution; is that right?

A: From what was in the photos, I do not believe that was harmful material. It was also published as art. (Emphasis added.)

[9] Q: Okay. Did [your trial attorney] explain to you that if you had a trial, the Court would instruct the jury about the things they would have to find in order to convict you; that there would be jury instructions from Judge Murach to the jury?

A: He did say there would be jury instructions. I don't recall hearing what the instructions were.

[10] Q: And would you agree with me that as your attorney was placing his motion in front of you, as you were trying to answer my question, I explained that Judge Murach qualified his question to you by way of the sexually explicit question by asking if you understand that the State has to prove you exhibited harmful material, that you were in fact showing the pictures of yourself, showing pictures of yourself in the nude to a child?

A: As it was said in court, *I was asked a question of if I had knowledge of the nature of the material, that it was harmful material. I agreed that it was.* I was not given an opportunity to express if it was art or in an art form. To me harmful material would be if I was erect or if I was touching myself or if someone else was in that photo.

knowing, intelligent, and voluntary. The court also rejected Trochinski's constitutional challenge, and accordingly, denied his postconviction motion.

¶ 14. Trochinski appealed both the judgment of conviction and the order denying his postconviction motion. The Court of Appeals, District IV, affirmed the

Q: Are you telling us, sir, that it would have been your understanding that it would have been acceptable for you to display pictures of yourself with your penis hanging out to children irrespective of whether you were erect or not?

A: No.

Q: What are you telling us then?

A: I'm saying that for one, she was inside the 60 days from turning 18. After I was arrested I found that out. I had every reason to believe she was over 18. She was the one that questioned me why I don't get into porn films, why I ain't going for calendars, and everything else. I had every reason to believe she was over 18. When she asked me for pictures, yes, I did give them to her.

Q: *Would you agree with me, sir, that the pictures that we are discussing,* which are in the record having been introduced at the time of the sentencing hearing, *are totally inappropriate for children?*

A: *Yes, for children.*

Q: *And that was your understanding at the time that you entered the plea, correct, that these would have been totally inappropriate for children?*

A: *Yes, for children.* I also—

Q: And in fact, sir, that is exactly what the element of the offense you are saying you don't understand is, correct, that the State would have to prove what you just said you understood?

A: From what I was understanding, I wasn't dealing with children. I was dealing with somebody presenting herself as an adult. And as far as the sentencing part, all of the material was not used as exhibits. There were three pieces out of ten. And I'm guessing that those three were probably the worst three to make it look harmful in that manner.

52

decisions of the circuit court in an unpublished per curiam opinion. *State v. Trochinski,* No. 00–2545–CR, unpublished slip op. (Wis. Ct. App. Mar. 29, 2001). The court concluded that Trochinski's plea was knowing, intelligent and voluntary because "the plea questionnaire and the plea colloquy both indicated that the State would need to prove that Trochinski exhibited harmful material to a child." *Id.* at ¶ 6. The court further held that a circuit court is not required to explain the elements of the offense beyond naming them and asking whether the defendant had any questions. Finally, the court held that Trochinski's facial constitutional challenge to Wis. Stat. § 948.11(2) was specifically rejected in *State v. Kevin L.C.,* 216 Wis. 2d 166, 186, 576 N.W.2d 62 (Ct. App. 1997), and that this court's subsequent decision in *State v. Weidner,* 2000 WI 52, 235 Wis. 2d 306, 611 N.W.2d 684, does not disturb the holding in *Kevin L.C.,* or require this court to reexamine that decision.

II

■■■■

¶ 15. To withdraw his plea after sentencing, Trochinski needed to establish by clear and convincing evidence, that failure to allow a withdrawal would result in a manifest injustice. *State v. Thomas,* 2000 WI 13, ¶ 16, 232 Wis. 2d 714, 605 N.W.2d 836. In other words, Trochinski was required "to show 'a serious flaw in the fundamental integrity of the plea.' " *Id.* (quoting *State v. Nawrocke,* 193 Wis. 2d 373, 379, 534 N.W.2d 624 (Ct. App. 1995). One of the situations where plea withdrawal is necessary to correct a manifest injustice is when "the plea was involuntary, or was entered without knowledge of the charge . . . ." *State v. Reppin,* 35 Wis. 2d 377, 385, 151 N.W.2d 9 (1967) (citing ABA

Standards for Criminal Justice, Part II, 2.1(a)(ii)(3));
*State v. Giebel,* 198 Wis. 2d 207, 212, 541 N.W.2d 815
(Ct. App. 1995)("A plea which is not knowingly, volun-
tarily or intelligently entered is a manifest injustice.").

¶ 16. Trochinski contends that his plea was en-
tered without knowledge of the "harmful to children"
element. We, therefore, review whether his plea was
knowingly, voluntarily and intelligently entered as a
question of constitutional fact. *State v. Bollig,* 2000 WI
6, ¶ 13, 232 Wis. 2d 561, 605 N.W.2d 199. "We will not
upset the circuit court's findings of historical or eviden-
tiary facts unless they are clearly erroneous." *Id.* How-
ever, whether Trochinski's plea was knowing and intel-
ligent poses a constitutional fact question, which we
independently review, benefiting from the analyses of
the circuit court and the court of appeals. *See id.* at
¶ 47 ("A plea violates due process unless the defendant
has a full understanding of the nature of the charges
against him."); *see also State v. Brandt,* 226 Wis. 2d 610,
618, 594 N.W.2d 759 (1999) (application of a set of facts
to the appropriate legal standard is a question of law we
review independently).

¶ 17. The standard and procedure for determin-
ing whether a plea is knowing, intelligent, and volun-
tary are laid out in Wis. Stat. § 971.08[11] and *State v.
Bangert,* 131 Wis. 2d 246, 274, 389 N.W.2d 12 (1986). To
withdraw his plea successfully, Trochinski must first
establish a prima facie case that the circuit court

---

[11] Wisconsin Stat. § 971.08 states in relevant part:

971.08 Pleas of guilty and no contest; withdrawal thereof.
(1) Before the court accepts a plea of guilty or no contest, it shall
do all of the following:

violated § 971.08 and allege that he did not know or understand the information that the court should have provided at the plea hearing. *Bangert,* 131 Wis. 2d at 274; *see also Bollig,* 2000 WI 6, ¶ 48; *Brandt* 226 Wis. 2d at 618; *State v. Van Camp,* 213 Wis. 2d 131, 140–141, 569 N.W.2d 577 (1997). Even after establishing a prima facie case, however, Trochinski would not automatically be allowed to withdraw his plea. The burden then shifts to the State "to show by clear and convincing evidence that the defendant's plea was knowingly, voluntarily, and intelligently entered." *Bangert,* 131 Wis. 2d at 274; *see also Bollig,* 2000 WI 6, ¶ 49; *Brandt* 226 Wis. 2d at 618; *Van Camp,* 213 Wis. 2d at 141.

¶ 18. Trochinski contends that he established a prima facie case in that he did not understand an element of the charge to which he pled. Specifically, Trochinski argues that he did not understand the meaning of "harmful to children." Trochinski contends that his trial counsel did not advise him about this element and what the State must show in order to convict him. Trochinski alleges he did not understand that the State must prove that the nude photographs were patently offensive to prevailing community standards regarding what is suitable for children— specifically, a child of like age—and lacked serious value when taken as a whole. He further contends that trial counsel erroneously failed to show him the jury instruc-

(a) Address the defendant personally and determine that the plea is made voluntarily with understanding of the nature of the charge and the potential punishment if convicted.

(b) Make such inquiry as satisfies it that the defendant in fact committed the crime charged.

tion that would have been given if he went to trial.[12] Essentially, Trochinski argues that because he did not understand how "harmful to children" would be judged by the jury with respect to Jill, being seventeen years and three months old, he did not understand the meaning of that element when he entered his plea. To further support his position, Trochinski relies on *State v. Nichelson,* 220 Wis. 2d 214, 225, 582 N.W.2d 460 (Ct. App. 1998), where the defendant was permitted to withdraw his plea because the record failed to demonstrate that he understood that "for the purpose of sexual gratification" was an element of sexual assault. Trochinski contends his situation was similar because he did not understand "harmful to children" and, therefore, he should be allowed to withdraw his no contest plea.

¶ 19. Trochinski also contends that the plea colloquy is insufficient to establish that the court inquired and determined his knowledge of the "harmful to children" element. He also argues that the plea questionnaire and waiver of rights form, which he initialed and signed, provides no evidence that he understood that not every photo depicting nudity is harmful to children. Based on this evidence, Trochinski contends that he has established the prima facie showing that his plea was not knowing and voluntary, and, therefore, the burden shifts to the State to establish by clear and convincing evidence that his plea was knowing, intelligent and voluntary. Trochinski argues that the State failed to meet this burden and, therefore, he is entitled to withdraw his plea as a matter of right.

---

[12] Trochinski refers to Wisconsin Jury Instruction—Criminal 2142.

¶ 20. We first turn to *Bangert*, to determine whether Trochinski's plea is knowing, intelligent and voluntary. The language used in *Bangert* is instructive here because the circuit court's only duty is to "inform the defendant of the charge's nature or, instead, to ascertain that the defendant in fact possesses such information." 131 Wis. 2d at 269. Contrary to Trochinski's argument, *Bangert* and subsequent cases do not require a court thoroughly to explain or define every element of the offense to the defendant.

¶ 21. In *Bangert*, the State and the defendant both admitted that the circuit court "neither recited the elements [of the offense] nor characterized the nature of the crime in a general manner." *Id.* at 265. This court, therefore, held that in order to find that a plea is knowing, intelligent, and voluntary, the circuit court must ensure the defendant understands, or is aware of, the essential elements of the crime.[13] Using this court's superintending and administrative authority, this court required circuit courts to determine a defendant's understanding of the nature of the charge at the plea hearing. *Id.* at 267.

> We characterize this obligation as a duty to first inform a defendant of the nature of the charge or, alternatively, to first ascertain that the defendant possesses accurate information about the nature of the charge. The court must then ascertain the defendant's understanding of the nature of the charge as expressly required by sec. 971.08(1)(a).

---

[13] Specifically, this court stated, "the time has arrived to require a trial court to do more than merely record the defendant's affirmation of understanding pursuant to sec. 971.08(1)(a)." *State v. Bangert,* 131 Wis. 2d 246, 267, 389 N.W.2d 12 (1986).

*Id.* To aid circuit court judges in fulfilling this requirement, this court laid out a non-exhaustive list of methods by which a circuit court judge could determine the defendant's understanding. We listed the following methods: (1) summarize the elements of the crime charged by reading from the appropriate jury instruction or from the applicable statute; (2) ask defendant's counsel whether he explained the nature of the charge to the defendant and request him to summarize the extent of the explanation, including a reiteration of the elements, at the plea hearing; or (3) expressly refer to the record or other evidence of the defendant's knowledge of the nature of the charge established prior to the plea hearing (*e.g.,* "specifically refer to and summarize any signed statement of the defendant which might demonstrate that the defendant has notice of the nature of the charge"). *Id.* at 268.

¶ 22. Wisconsin's courts have been relying on *Bangert* since it was written in 1986, and nothing in that case suggests that a circuit court is required to do as Trochinski suggests here—describe the elements of the offense and ensure the defendant specifically understands *how* the State must prove each element. Trochinski alleges that he did not understand that every nude photo of him is not necessarily harmful to children. However, this is not required. Wisconsin Stat. § 971.08 and *Bangert* require that Trochinski knew and understood the elements of the offense.

¶ 23. Applying the *Bangert* standard and procedure to the facts presented here, and upon review of the record, we conclude that Trochinski has failed to meet his burden to establish a prima facie case. Trochinski's knowledge of the elements of the offense is clearly established by both the signed plea questionnaire and the plea colloquy. The elements of § 948.11(2) are

clearly laid out on the plea questionnaire, including "[y]ou exhibited harmful material to a child" and "[y]ou had knowledge of the nature of the material." Furthermore, during the plea colloquy Trochinski acknowledged he understood the plea form, the information in the form was truthful, and again the court summarized the elements of the crime as applied to the offense to which Trochinski was pleading no contest. Moreover, at the postconviction hearing, Trochinski testified that he understood the elements of the offense, and that he knew the photos were harmful and were "totally inappropriate" for children.

¶ 24. We specifically reject Trochinski's argument that he did not understand the meaning of "harmful to children" because he did not understand that the jury would decide whether the photos were inappropriate for Jill L., who was seventeen years and three months old. Under the laws of Wisconsin, Jill L. was still a child because she had not yet attained the age of eighteen. *See* Wis. Stat. § 948.01(1). By distinguishing between seventeen and eighteen year-olds, the legislature has decided that Jill L., at seventeen years and three months old, was a child. As previously stated, the record clearly demonstrates that Trochinski knew, understood and acknowledged that the photos were harmful to children. For his plea to be a knowing, intelligent, and voluntary one, it was therefore not necessary that Trochinski be informed by the circuit court judge that the photos had to be harmful specifically to Jill. It was his responsibility to determine whether she was a child.

¶ 25. Trochinski also relies on *State v. Nichelson,* 220 Wis. 2d 214, 582 N.W.2d 460 (Ct. App. 1998) to support his position. However, the facts of *Nichelson* are not analogous to the facts present here. Among other things, *Nichelson* involved a defendant with a

mental handicap and the record was silent with respect to the defendant's understanding of at least one element of the offense charged. 220 Wis. 2d at 225. Furthermore, the State tried to rely on the defendant's testimony at the postconviction hearing, which the circuit court found incredible. *Id.* at 221–222. Based on all of these circumstances, the court of appeals concluded that "[t]his summary is too ambiguous to establish that Nichelson knew or understood the State's duty." *Id.* at 225. In contrast, Trochinski does not claim to have a mental handicap and, as previously demonstrated, the record is not silent on any element of the offense.

¶ 26. In contrast to *Nichelson,* this court's decisions in *State v. Bollig,* 2000 WI 6, 232 Wis. 2d 561, 605 N.W.2d 199, and *State v. Brandt,* 226 Wis. 2d 610, 594 N.W.2d 759 (1999), support our decision. In *Bollig,* the State conceded that the circuit court did not inform the defendant of one of the essential elements of the offense. 2000 WI 6, ¶ 51. Accordingly, the court concluded that the defendant made a prima facie showing that his plea did not conform to the *Bangert* requirements. *Id.* However, this court then relied on the entire record to determine that the defendant was aware of all of the elements of the crime charged. *Id.,* ¶ 53. Specifically, this court looked to the signed plea questionnaire, containing a specific reference to the elements of the offense, followed by the defendant's signature, and the defendant's presence at a pre-trial hearing. *Id.,* ¶¶ 54–55. "Viewed together, the plea questionnaire and Bollig's presence at the pre-trial hearing satisfied the State's burden to show by clear and convincing evidence that Bollig was aware of the nature of his offense, despite the inadequacy of the plea colloquy." *Id.,* ¶ 55.

¶ 27. Similarly, in *Brandt,* this court concluded that despite an incorrect plea questionnaire, the plea colloquy established that the defendant was aware of and understood the elements of the crime charged. 226 Wis. 2d at 622. The plea questionnaire was admittedly unreliable because the elements set forth in the plea questionnaire failed to advise the defendant of the nature of the crimes to which he was pleading guilty. *Id.* at 620. However, this court concluded that since the circuit court did not rely on the plea questionnaire in accepting the defendant's plea, the deficient plea questionnaire does not automatically make the plea itself deficient. *Id.* at 622. The court then considered the adequacy of the plea colloquy, concluding that "the circuit court's plea colloquy easily satisfied the constitutional and statutory requirements." *Id.*

¶ 28. *Brandt* and *Bollig* are persuasive here because in those cases this court relied on *either* the plea questionnaire or the plea colloquy to conclude that the defendant understood the elements of the offense. *See also, State v. Duychak,* 133 Wis. 2d 307, 314, 395 N.W.2d 795 (Ct. App. 1986) (concluding that trial court's compliance with one of the alternative methods mandated in *Bangert* reflects the defendant's understanding of the offense). Here, we have *both* a complete and accurate plea waiver questionnaire *and* a complete and accurate plea colloquy establishing that Trochinski knew and understood the elements of the offense to which he was pleading.

¶ 29. Furthermore, like the language in *Bangert,* the language in *Brandt* and *Bollig* supports our conclusion that a valid plea requires only knowledge of the elements of the offense, not a knowledge of the nuances and descriptions of the elements. *See also State v.*

*McKee,* 212 Wis. 2d 488, 494, 569 N.W.2d 93 (Ct. App 1997) (rejecting argument that additional steps beyond *Bangert* are required for a valid plea). In *Brandt,* this court quotes with approval from *Bangert,* "A defendant's understanding of the nature of the charge must 'include an *awareness* of the essential elements of the crime.' " 226 Wis. 2d 610 at 619 (emphasis added). In *Bollig,* we also cited the *Bangert* standard, concluding that the State must prove that Bollig "was *aware* of all three elements of his offense, despite the inadequacy of the plea colloquy." 2000 WI 6, ¶ 52 (emphasis added). We further cited *Brandt,* stating, "The information contained in the questionnaire may be used to demonstrate Bollig's *awareness* of the nature of his offense." *Id.,* ¶ 54 (emphasis added).

¶ 30. Our previous decisions make it clear that in order for Trochinski's plea to be knowing, intelligent, and voluntary, he needed to be aware of the nature of the offense to which he was pleading. Based on the record, including both the signed plea questionnaire and the plea colloquy, we, therefore, conclude that Trochinski was aware and understood the elements of Wis. Stat. § 948.11(2) to which he pled. Accordingly, we conclude that Trochinski has failed to establish a prima facie case that his plea was not knowing, intelligent and voluntary, and we affirm the decision of the court of appeals.

¶ 31. Before we address Trochinski's constitutional challenge, we note that we disagree with the dissent's characterization of the issue as "whether the totality of the facts in the record is sufficient to support the crime to which the defendant pleaded." Dissent at ¶ 47. Specifically, the dissent contends that Trochinski "did not realize that his conduct did not fall within the

62

scope of the conduct prohibited under the statute charged." *Id.* The dissent then concludes that the circuit court's decision that a sufficient factual basis existed to support the plea was an error of law. *Id.* at ¶ 62. We respectfully disagree. When accepting the plea, the circuit court explicitly relied on the probable cause portion of the complaint as setting forth a factual basis sufficient to support the plea. *See* note 6, *supra.* The facts stated in the record, and specifically in the probable cause portion of the complaint, are sufficient to uphold the circuit court's decision that there is a sufficient factual basis to support the plea. The trial court knew, based on the record, that Trochinski intentionally gave Jill L., a child, nude photos of himself—photos which Trochinski himself admits are harmful to children. *See* note 10, *supra.* The trial court also knew, based on the record, that in addition to the nude photos, Trochinski gave Jill L. the alleged Playgirl letter and a personal letter inviting her to review the nude photographs. Accordingly, even if we were to frame the issue as whether there was a sufficient factual basis to support the plea, we would conclude that the circuit court's denial of Trochinski's motion to withdraw his plea was not erroneous. The circuit court's decision that a sufficient factual basis existed to support the plea was not an error of law.

¶ 32. We further disagree with the dissent's conclusion that the nude photographs are not "harmful material" and therefore do not supply a factual basis for the offense charged. Dissent at ¶ 62. The dissent concludes that the photos of the defendant standing naked in front of a curtain, displaying a non-erect penis do not satisfy the three-part variable obscenity test in Wis. Stat. § 948.11(1)(b). By applying contemporary commu-

63

nity standards, we conclude that the nude photos appeal to the prurient interest of children, *see* § 948.11(1)(b)1., and are patently offensive with respect to what is suitable for children, *see* § 948.11(1)(b)2. Further, we conclude that the nude photos "lack[] serious literary, artistic, political, scientific or educational value for children, when taken as a whole." *See* § 948.11(1)(b)3. A reasonable minor of like age of Jill L., seventeen, would not find literary, artistic, political, scientific, or educational value in the photos. *See State v. Thiel,* 183 Wis. 2d 505, 536, 515 N.W.2d 847 (1994). We, therefore, conclude, as the circuit court did impliedly, that the nude photographs are harmful material, and that there was a sufficient basis to support Trochinski's plea. There was no error of law. Further, the circuit court's denial of the motion to withdraw the plea was not an erroneous exercise of the judge's discretion, and we conclude that the court was correct that there was no manifest injustice.

III

¶ 33. We now turn to Trochinski's facial constitutional challenge to Wis. Stat. § 948.11(2). The constitutionality of a statute presents a question of law that we review independently, benefiting from the analyses of the circuit court and the court of appeals. *State v. Weidner,* 2000 WI 52, ¶ 7, 235 Wis. 2d 306, 611 N.W.2d 684. "Statutes generally enjoy a presumption of constitutionality that the challenger must refute." *Id.* (citing *Wis. Retired Teacher's Ass'n v. Employe Trust Funds Bd.,* 207 Wis. 2d 1, 18, 558 N.W.2d 83 (1997). When a statute infringes on First Amendment rights, however, the State bears the burden of proving the statute constitutional beyond a reasonable doubt. *Weidner,*

2000 WI 52, ¶ 7; *City of Madison v. Baumann,* 162 Wis. 2d 660, 669, 470 N.W.2d 296 (1991).

¶ 34. Before addressing the merits of Trochinski's constitutional challenge, we begin by examining Wis. Stat. § 948.11(2) and the scope of Trochinski's constitutional challenge. Wisconsin Stat. § 948.11(2) provides:

> (2) CRIMINAL PENALTIES. (a) Whoever, with knowledge of the nature of the material, sells, rents, exhibits, transfers or loans to a child any harmful material, with or without monetary consideration, is guilty of a Class E felony.[14]

We note that Trochinski is not challenging the statute as applied to this specific set of circumstances.[15] In-

---

[14] We note that Wis. Stat. § 948.11(2) was substantially amended by 2001 Wisconsin Act 16, effective September 1, 2001. Section 948.11(2) now reads:

> (a) Whoever, with knowledge of the character and content of the material, sells, rents, exhibits, plays, distributes, or loans to a child any harmful material, with or without monetary consideration, is guilty of a Class E felony if any of the following applies:
>
> 1. The person knows or reasonably should know that the child has not attained the age of 18 years.
>
> 2. The person has face-to-face contact with the child before or during the sale, rental, exhibit, playing, distribution, or loan.

While we note this statutory amendment, we clarify that this revised statute was not applicable at the time of Trochinski's offense. Therefore, we base our analysis on Trochinski's challenge to the 1997–1998 version, and we do not address a constitutional challenge under this revised statute.

[15] Trochinski has waived his right to challenge Wis. Stat. § 948.11(2) as applied, because of his plea. *State v. Molitor,* 210 Wis. 2d 415, 419, 565 N.W.2d 248 (Ct. App. 1997). "A plea of

stead, he asserts a facial constitutional challenge, alleging that § 948.11(2), on its face, is unconstitutional because he claims it imposes strict liability for constitutionally protected expression.

¶ 35. Trochinski claims that Wis. Stat. § 948.11(2) is unconstitutional because it does not require proof that the offender knew the age of the person to whom the materials were displayed. As a variable obscenity statute, Trochinski argues that age is the element that takes conduct out of First Amendment protection and makes it criminal. If the person viewing the pictures is eighteen years old, the conduct involves protected speech. If the viewer is not eighteen, however, the conduct is criminal. Trochinski claims that because § 948.11(2) does not require proof of a scienter requirement as to the sole deciding factor differentiating protected expression from criminal conduct—the victim's age—the statute is unconstitutional.

¶ 36. Furthermore, Trochinski adds that the result of Wis. Stat. § 948.11(2) is self-censorship. He contends that even if a person believes he is communicating with an adult, he must nevertheless limit communications to those appropriate for children because otherwise he risks absolute liability under the variable obscenity statute. Specifically, Trochinski argues that he believed Jill L. was eighteen because Jill L. sold him beer, an activity prohibited to minors in

no contest waives all non-jurisdictional defects in the proceedings." *Id.* (citing *State v. Princess Cinema of Milwaukee, Inc.* 96 Wis. 2d 646, 651, 292 N.W.2d 807 (1980)). In contrast, a facial challenge to the constitutionality of a statute is a matter of subject matter jurisdiction and cannot be waived. *Molitor,* 210 Wis. 2d 415 at 419; *State ex rel. Skinkis v. Treffert,* 90 Wis. 2d 528, 538–539, 280 N.W.2d 316 (Ct. App. 1979).

Wisconsin. According to Trochinski, because she sold him beer, he was unable to ascertain Jill L.'s age, and, therefore, essentially there was no personal meeting.[16]

¶ 37. Trochinski's constitutional arguments, however, overlook the holdings of Wisconsin appellate court decisions discussing constitutional challenges to statutes that do not require the State to prove the offender had knowledge of the victim's age. In *State v. Kevin L.C.*, 216 Wis. 2d 166, 576 N.W.2d 62 (Ct. App. 1997), the court of appeals specifically rejected a facial constitutional challenge to Wis. Stat. § 948.11(2). The court concluded that the statute is constitutional because it criminalizes conduct where the offender has an opportunity to confront personally the child to ascertain the

---

[16] Trochinski's "personal meeting" argument, although creative, is better characterized as an affirmative defense rather than part of a constitutional challenge. Trochinski could have made this argument under § 948.11(2)(c) which states:

> It is an affirmative defense to a prosecution for a violation of this section if the defendant had reasonable cause to believe that the child had attained the age of 18 years, and the child exhibited to the defendant a draft card, driver's license, birth certificate or other official or apparently official document purporting to establish that the child had attained the age of 18 years. A defendant who raises this affirmative defense has the burden of proving this defense by a preponderance of the evidence.

Trochinski perhaps could have utilized this affirmative defense in the statute if he showed reasonable cause to believe that Jill L. was eighteen (the sale of beer) and that Jill L. had exhibited some sort of official proof that she had attained eighteen. As the statute suggests, Trochinski should have acted on his purported belief that Jill L. was eighteen by asking her age and for official proof that she was indeed eighteen. Regardless, Trochinski cannot rely on this defense now because, pursuant to his no contest plea, Trochinski waived his right to present any such defense.

child's age. 216 Wis. 2d at 188. The court of appeals specifically relied on this court's holding in *State v. Thiel,* 183 Wis. 2d 505, 522, 515 N.W.2d 847 (1994), concluding that § 948.11(2) is not unconstitutionally overbroad because each of the terms—sell, loan, exhibit, and transfer—represent a knowing and affirmative act of an individual toward a minor. *Kevin L.C.,* 216 Wis. 2d at 185. The court of appeals then looked at *United States v. X-Citement Video, Inc.,* 513 U.S. 64, 78 (1994), where the United States Supreme Court held that a child pornography distribution statute required proof that the distributor knew the age of the performers depicted in the materials. In addition, however, the court of appeals noted that the Supreme Court discussed an exception to the presumption of a scienter requirement where "the perpetrator confronts the underage victim personally and may reasonably be required to ascertain that victim's age." *X-Citement Video,* 513 U.S. at 72 n.2. Comparing the type of conduct prohibited in § 948.11(2) to statutes prohibiting sexual contact with minors and production of child pornography, the court of appeals concluded that all of the statutes, including § 948.11(2), criminalize conduct in situations involving personal contact between the perpetrator and the child-victim. *Kevin L.C.,* 216 Wis. 2d at 187. The court stated:

> Because § 948.11(2)(a), STATS., criminalizes acts where an individual personally confronts, or has the opportunity to personally confront, a specific child, thereby allowing the individual to easily ascertain the child's age, we conclude the statute does not create an unreasonable burden on the individual's First Amendment rights.

*Id.* at 188.

¶ 38. This court relied on the same personal contact distinction in both *State v. Zarnke,* 224 Wis. 2d 116, 589 N.W.2d 370 (1999), and *State v. Weidner,* 2000 WI 52, 235 Wis. 2d 306, 611 N.W.2d 684.[17] In *Zarnke,* we concluded that a distribution of child pornography statute was unconstitutional as applied to distributors (as opposed to producers), because distributors are not in a position for face-to-face contact with the child. 224 Wis. 2d at 132 ("[W]e hold that the statute is unconstitutional as it applies to those activities which do not include some interaction between the accused and the child-victim."). In *Weidner,* this court similarly concluded that Wis. Stat. § 948.11(2) is unconstitutional "in the context of the internet and other situations that do not involve face-to-face contact." 2000 WI 52, ¶ 37. We specifically distinguished the holding in *Weidner* from *Kevin L.C.* indicating that *Weidner* "do[es] not disturb [*Kevin L.C.*'s] holding because that case essentially addressed only face-to-face interaction." *Id.*

¶ 39. We conclude that the constitutionality of Wis. Stat. § 948.11(2) is already a matter of settled law. In both *Thiel* and *Kevin L.C.,* this court and the court of appeals, respectively, previously addressed the constitutionality of § 948.11(2), and we decline Trochinski's invitation to reverse those decisions based on recent cases, which are distinguishable on the basis of personal contact. The scope of § 948.11(2) is fundamentally dif-

---

[17] We acknowledge that both *State v. Zarnke,* 224 Wis. 2d 116, 132, 589 N.W.2d 370 (1999), and *State v. Weidner,* 2000 WI 52, ¶ 37, 235 Wis. 2d 306, 611 N.W.2d 684, involved "as applied" challenges to statutes rather than facial constitutional challenges. The substance of the challenges, however, related to the scienter requirement and therefore, those decisions are instructive here.

ferent than the situations in *Zarnke* and *Weidner*, because under the statute there is a reasonable expectation of face-to-face contact. As we stated in *Thiel:*

> [T]he language of sec. 948.11 focuses upon the affirmative conduct of an individual toward a specific minor or minors. Therefore, an individual violates the statute if he or she, aware of the nature of the material, knowingly offers or presents for inspection to a specific minor or minors material defined as harmful to children in sec. 948.11(1)(b).

183 Wis. 2d at 535. We reiterate that the personal contact between the perpetrator and the child-victim is what allows the State to impose on the defendant the risk that the victim is a minor.[18]

¶ 40. Here, the personal contact between Trochinski and Jill L. is what allows the State to impose on Trochinski the risk that Jill L. is a minor. Trochinski had face-to-face contact with Jill L. when he gave her the photos and the letter. During this time, Trochinski had the opportunity to ascertain her age, and could have done so by questioning her, and requesting an official document verifying that she was eighteen. *See* Wis. Stat. § 948.11(2)(c).

¶ 41. Based on this court's previous decisions, concluding that Wis. Stat. § 948.11(2) is constitutional because the scope of conduct criminalized anticipates face-to-face contact between the perpetrator and the child-victim, we affirm the decision of the court of

---

[18] Since we base our conclusion on previous cases, specifically *State v. Thiel,* 183 Wis. 2d 505, 515 N.W.2d 847 (1994), and *State v. Kevin L.C.,* 216 Wis. 2d 166, 576 N.W.2d 62 (Ct. App. 1997), we do not find it necessary to review the entire overbreadth analysis here. *See Thiel,* 184 Wis. 2d at 523 (concluding that the statute is rationally related to its compelling state interest to protect the well-being of youth).

appeals. We specifically reject Trochinski's arguments that the statute is unconstitutional because it does not require the State to prove the defendant knew the victim was a minor.

## IV

¶ 42. In summary, we affirm the court of appeals' decision on both issues. First, Trochinski has failed to establish a prima facie case that his no contest plea was not a knowing, intelligent and voluntary one. Both the plea questionnaire and the plea colloquy indicate that Trochinski knew and understood the elements of the offense to which he was pleading. Second, we reject Trochinski's facial constitutional challenge to Wis. Stat. § 948.11(2). We conclude, based on this court's previous decisions, that the scope of conduct criminalized in § 948.11(2) anticipates face-to-face contact between the perpetrator and the child-victim. This personal contact allows the perpetrator to ascertain reasonably the age of the child-victim.

*By the Court.*—The decision of the court of appeals is affirmed.

¶ 43. SHIRLEY S. ABRAHAMSON, CHIEF JUSTICE *(dissenting).* Because a sufficient factual basis does not support the defendant's no contest plea to the crime charged, I conclude that the defendant must be permitted to withdraw his plea. Accordingly, I dissent.

¶ 44. Before accepting a defendant's plea of no contest, a circuit court must satisfy itself that a sufficient factual basis exists that the defendant committed the crime to which the defendant entered the plea.

Wisconsin Stat. § 971.08(1)(b) (1999–2000)[1] explicitly provides that "[b]efore the court accepts a plea of guilty or no contest, . . . it shall . . . [m]ake such inquiry as satisfies it that the defendant in fact committed the crime charged."[2] When no evidence exists as to one of the elements of the crime charged, a circuit court cannot accept a defendant's plea of guilty or no contest.[3]

¶ 45. This court reviews a circuit court's decision denying a defendant's motion to withdraw a plea of no contest to determine whether the circuit court erroneously exercised its discretion in denying the motion.[4] "Failure by the circuit court judge to ascertain that 'the defendant in fact committed the crime charged' is an erroneous exercise of discretion."[5] Thus, when a circuit

---

[1] All subsequent references to the Wisconsin Statutes are to the 1999–2000 version, unless otherwise indicated.

[2] *See State v. Thomas,* 2000 WI 13, ¶ 23, 232 Wis. 2d 714, 605 N.W.2d 836; *State v. Bangert,* 131 Wis. 2d 246, 262, 389 N.W.2d 12 (1986); *White v. State,* 85 Wis. 2d 485, 490, 271 N.W.2d 97 (1978).

When there is a negotiated plea, as in the present case, the circuit court need not go to the same length to determine whether the facts would sustain the charge as it would when there is no negotiated plea. *Broadie v. State,* 68 Wis. 2d 420, 423–24, 228 N.W.2d 687 (1975); *Wilson v. State,* 57 Wis. 2d 508, 513, 204 N.W.2d 508 (1973).

[3] A circuit court does not participate in a plea agreement and is not bound by a plea agreement between the State and a defendant. *Young v. State,* 49 Wis. 2d 361, 367, 182 N.W.2d 262 (1971); *State v. Wolfe,* 46 Wis. 2d 478, 488, 175 N.W.2d 216 (1970).

[4] *State v. Smith,* 202 Wis. 2d 21, 25, 549 N.W.2d 232 (1996); *White,* 85 Wis. 2d at 491.

[5] *State v. Johnson,* 207 Wis. 2d 239, 244, 558 N.W.2d 375 (1997).

court erroneously determines that the facts are sufficient to constitute the crime charged, the circuit court has committed an error of law, and the circuit court has erroneously exercised its discretion in denying the defendant's motion to withdraw the plea.[6] This court must determine in the present case whether, as a matter of law, the facts are sufficient to constitute the crime charged to which the defendant pled no contest.

¶ 46. At the hearing on the motion to withdraw his plea, the defendant testified that he did not believe that the photographs were sufficient to support a conviction for the crime. The circuit court made no finding at that hearing that the facts were sufficient to establish the crime. But the defendant did not directly argue that no factual basis supported his conviction. Rather, both in the circuit court and here, the defendant primarily argued that his plea was not voluntary because he did not understand the "harmful material" element of the offense. I agree with the circuit court and the majority opinion that the plea was voluntary in that the defendant understood the nature of the charge.

¶ 47. The underlying issue in the case is not, in my view, whether the defendant's plea was voluntary, but whether the totality of the facts in the record is sufficient to support the crime to which the defendant pled. A circuit court must determine whether a factual basis for the crime exists when there is a plea of no contest. The factual basis for a crime charged when

A postconviction motion for the withdrawal of a guilty plea is granted to correct a manifest injustice. One type of manifest injustice is the failure to establish a sufficient factual basis that the defendant committed the offense to which he pleads. *Johnson,* 207 Wis. 2d at 244.

[6] *See White,* 85 Wis. 2d at 490–92.

receiving a no contest plea "is distinct from the . . . voluntariness requirement."[7] A factual basis must be established to "protect a defendant who is in the position of pleading voluntarily with an understanding of the nature of the charge but without realizing that his conduct does not actually fall within the charge."[8] The defendant claims that he did not realize that his conduct did not fall within the scope of the conduct prohibited under the statute charged.

¶ 48. So what is the factual basis for the charge? The complaint in the present case alleges that the defendant "unlawfully with knowledge of the nature of the material [did] transfer to a child, to-wit: J.A.L., F/W dob: 09–30–81, harmful material, to-wit: a picture of himself depicting nudity, contrary to Section 948.11(2)(a) Wis. Stats. (Class E Felony)." The Statement of Probable Cause describes the photographs as of the defendant "standing nude and in a manner displaying his penis." The Statement of Probable Cause also refers to a letter the defendant gave the victim "inviting her [the victim] to review the photographs and conveying information regarding his achievement of being accepted to display himself in Playgirl Magazine." The Statement of Probable Cause also refers to a letter from Playgirl Magazine (known to the officer "to be a periodical which includes publication of nude photographs of male individuals") advising the defendant that he was being selected as a subject for entry into the magazine.

¶ 49. The photographs were not attached to the complaint or Statement of Probable Cause. The letters were not attached to the complaint or the Statement of

---

[7] *Thomas,* 2000 WI 13, ¶ 14, citing *White,* 85 Wis. 2d at 491.

[8] *McCarthy v. United States,* 394 U.S. 459, 467 (1969) (quoted in *White,* 85 Wis. 2d at 491).

Probable Cause. The complaint does not allege that the printed materials are harmful material under the statute. Moreover, the printed materials do not fit the statutory description of harmful material.

¶ 50. At the plea hearing in the present case, the circuit court accepted the plea without examining the photographs depicting nudity that the complaint alleges to be the harmful material. The circuit court simply concluded that the record, "especially the probable cause section of the complaint," set forth a factual basis sufficient to support the plea. The defendant was thereafter sentenced to six years in prison, as recommended by the State.[9]

¶ 51. If our examination of the record ended here, it is obvious that a sufficient factual basis does not exist to support the circuit court's legal conclusion that the facts were sufficient to support the defendant's plea to the crime charged. The complaint and Statement of Probable Cause simply state that the defendant showed photographs of himself nude to a young woman who was then seventeen years and three months of age. That's it.

¶ 52. Not all nude photos shown to a person over the age of seventeen but below the age of eighteen violate the statute. Although the statute defines "harmful material" to mean a visual representation "that depicts nudity,"[10] the statute requires that the visual representation of nudity be *harmful to children.*"[11] (Emphasis added.)

---

[9] The defendant was sentenced as a repeater. He had two prior convictions for battery, one that involved violence to a child and one that involved intoxication and violence to a woman. In addition, his parole had been revoked twice.

[10] Nudity is defined as the showing of the human male or female genitals. Wis. Stat. § 948.11(1)(d).

[11] Wis. Stat. § 948.11(1)(ar)1.

¶ 53. The statute defines "harmful to children" by setting forth a three-part test that must be satisfied in order for a visual depiction of nudity to be harmful to children. The three-part test is as follows:

> "Harmful to children" means that quality of any description, narrative account or representation, in whatever form, of nudity, sexually explicit conduct, sexual excitement,[12] sadomasochistic abuse, physical torture or brutality, when it:
>
> 1. Predominantly appeals to the prurient, shameful or morbid interest of children;
>
> 2. Is patently offensive to prevailing standards in the adult community as a whole with respect to what is suitable for children; and
>
> 3. Lacks serious literary, artistic, political, scientific or educational value for children, when taken as a whole.[13]

---

The defendant also gave the young woman a copy of a letter allegedly from Playgirl and a letter from himself, the contents of which are not described in the Statement of Probable Cause. The complaint does not allege that these letters are harmful materials in violation of Wis. Stat. § 948.11. Section 948.11(1)(ar)2. defines harmful material as printed matter that contains a photograph or other visual representation violating § 948.11(1)(ar)1. or "explicit and detailed verbal descriptions or narrative accounts of sexual excitement, sexually explicit conduct, sadomasochistic abuse, physical torture or brutality and that, taken as a whole, is harmful to children."

[12] Sexual excitement means the condition of human male or female genitals when in a state of sexual stimulation or arousal. Wis. Stat. § 948.11(1)(f).

[13] Wis. Stat. § 948.11(1)(b).

Without examining the photographs, a court cannot determine whether the photographs satisfy this three-part test.

¶ 54. Nudity seems to be the least offensive type of visual representation listed in the statute. The other visual representations falling within the statute are "sexually explicit conduct, sexual excitement, sadomasochistic abuse, physical torture or brutality." Furthermore, the victim here is seventeen years and three months of age, nine months short of being beyond the age the statute covers. If the victim were eighteen years of age, the defendant could not be charged under this statute for displaying the photograph to the young woman.

¶ 55. The Wisconsin legislature created a variable obscenity statute in Wis. Stat. § 948.11, apparently adapting the Miller[14] obscenity test to proscribe conduct relating to children. A variable obscenity statute delineates what is obscene for children; what is obscene for children may very well not be obscene for adults.[15]

¶ 56. A problem with § 948.11 is that it does not tell us whether the statute is variable within itself regarding the age of the children viewing the materials. This court stated in *State v. Thiel,* 183 Wis. 2d 505, 536, 515 N.W.2d 847 (1994), that whether any given material lacks serious literary, artistic, political, scientific, or educational value for children (§ 948.11(1)(b)3.), when taken as a whole, should be "assessed by a reasonable

---

[14] *Miller v. California,* 413 U.S. 15 (1973).

[15] *State v. Thiel,* 183 Wis. 2d 505, 525 n.13, 515 N.W.2d 847 (1994).

minor of like age to the minor to whom the material is exhibited."[16] (Emphasis in original.)

¶ 57. If we are to consider the age of the minor victim in interpreting Wis. Stat. § 948.11(1)(b)3., should we also consider the age of the minor victim in interpreting § 948.11(1)(b)1. and (1)(b)2.? If we do not consider the age of the minor victim in interpreting what is harmful to children under § 948.11(1)(b)1. and (1)(b)2., what age child do we use in interpreting the statute? Five-year-olds are different from children who are between seventeen and eighteen years of age.[17]

¶ 58. Thus, a simple review of the facts of the complaint and Statement of Probable Cause puts a court on notice that the facts stated are not sufficient to constitute the crime to which the defendant pled. However, in other cases involving a review of the factual basis of a plea (cases that are not entirely similar to the present case), this court has examined the whole

[16] The supreme court of Virginia concluded that "if a work is found to have a serious literary, artistic, political or scientific value for a legitimate minority of normal, older adolescents, then it cannot be said to lack such value for the entire class of juveniles taken as a whole." *American Booksellers Ass'n v. Commonwealth,* 882 F.2d 125, 127 (4th Cir. 1989) (quoting *Commonwealth v. American Booksellers Ass'n,* 372 S.E.2d 618, 624 (Va. 1988)).

[17] In *Ashcroft v. American Civil Liberties Union,* 535 U.S. 564, 122 S.Ct. 1700 (2002), Justices Kennedy, Souter, and Ginsburg concurring in the judgment stated that the court fails to reach the issue "whether the statute's failure to distinguish between material that is harmful to a six year old versus a sixteen year old is problematic."

record.[18] I therefore examine the entire record to determine if a sufficient factual basis exists to support the defendant's plea.

¶ 59. Two of the ten photographs referred to in the Statement of Probable Cause were offered and received in evidence at the sentencing hearing. The photographs show the defendant standing naked in front of a curtain, displaying a non-erect penis.

¶ 60. Many would probably agree that the defendant's conduct is distasteful and even possibly predatory.[19] The issue before us, however, is not the character of the defendant, or whether he engaged in conduct of which we disapprove, or whether he engaged in some sort of anti-social or criminal conduct. The issue here is whether the defendant's conduct in displaying the photos to a young woman over the age of

---

[18] *See Thomas,* 2000 WI 13, ¶ 23, citing *White,* 85 Wis. 2d at 491.

[19] The defendant's parole officer testified that the defendant's conduct was "sexually inappropriate" and "very typical of grooming behavior in which the person is trying to get the child to have an interest and to manipulate them to have sex with them."

In the sentencing hearing the prosecutor stressed that the case was about a man in his late twenties who displayed photos of himself and a soliciting type of letter. "What 29–year-old or 28–year-old self-respecting male is going to run around the countryside taking pictures of himself standing in the nude displaying his male organ, showing them to anybody . . . ? We are talking about someone who is using pictures of himself in all likelihood to solicit candidates for his ongoing quest to father 12 children . . . ."

This argument may be valid in a sentencing hearing but this argument does not assist in determining whether a factual basis exists for the crime charged.

seventeen years constituted, as a matter of law, the offense to which the defendant pled no contest. The facts in the entire record raise significant doubts.

¶ 61. The weakness of the State's decision to prosecute the offense charged is clearly demonstrated in the prosecutor's argument at sentencing. At the sentencing hearing the State argued that the pictures in and of themselves were not the "sort of the thing that would cause the concern that is before [the court]." The State emphasized that the crux of the offense in the present case was that the defendant was using the photographs in an attempt to seduce the seventeen-year-old and that the defendant should be punished for this predatory conduct.

¶ 62. After examining the entire record, I am compelled to conclude that the circuit court's decision that a sufficient factual basis exists to support the plea of no contest was an error of law. The circuit court never analyzed the statutory standard of "harmful material" set forth in Wis. Stat. § 948.11(1)(ar)1. and (1)(b). The circuit court also failed to apply the "harmful material" standard to the photographs in the record and to the circumstances of the case, including the age of the victim. The circuit court concluded without explanation and before examining the photographs that there was "a factual basis sufficient to support the plea that is offered." The photographs do not supply a factual basis for the offense charged.

¶ 63. For the reasons set forth, I conclude that the defendant has raised a serious question as to whether displaying the photographs to the seventeen-year-old plus in the present case violates the statutory standard. I therefore further conclude that the circuit court erred as a matter of law in refusing to allow the defendant to withdraw his plea of no contest and that the parties

should be returned to their respective positions before they entered the plea agreement.

¶ 64. One final point. At least as to a seventeen-year-old victim, the statutes seem to punish persons who are less culpable more severely than they punish more culpable persons. For example, had the defendant had sexual intercourse with the victim, a minor over the age of sixteen, he would be guilty of a Class A misdemeanor, with a maximum punishment of imprisonment not to exceed nine months.[20] However, the maximum penalty for the felony charged in the present case, displaying a photograph of a nude male to a minor who is seventeen years old, is two years in prison. I suggest that the legislature might want to review these statutes. *See* Wis. Stat. §§ 13.83(1)(c)1. and 13.93(2)(d).

¶ 65. For the reasons set forth, I dissent.

¶ 66. I am authorized to state that Justice WILLIAM A. BABLITCH joins this opinion.

---

[20] Wis. Stat. § 948.09.