**COURT OF APPEALS
DECISION
DATED AND FILED**

**December 30, 2022**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No. 2022AP272-CR**

**STATE OF WISCONSIN**

Cir. Ct. No. 2017CF354

**IN COURT OF APPEALS
DISTRICT IV**

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

 V.

DAMON D. TAYLOR,

   DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for La Crosse County: RAMONA A. GONZALEZ, Judge. *Judgment reversed in part; order reversed and cause remanded for further proceedings.*

Before Kloppenburg, Fitzpatrick, and Graham, JJ.

¶1     KLOPPENBURG, J. Damon Taylor entered *Alford*[1] pleas to charges of second degree recklessly endangering safety with use of a dangerous weapon ("reckless endangerment"), possession of a firearm by a felon, and failure to comply with an officer's attempt to take person into custody, all as a repeater. Taylor moved to withdraw his pleas after sentencing. The circuit court held an evidentiary hearing and denied the motion. On appeal, Taylor renews the three arguments in support of his motion that he made in the circuit court: (1) his pleas were not knowingly entered because the record of the plea hearing fails to demonstrate that the court explained the elements of the offenses, the plea questionnaire does not state the elements of the offenses, and the record of the plea hearing and the motion hearing demonstrates that Taylor did not understand the elements; (2) his pleas were not voluntarily entered because they were compelled by his belief that his trial counsel was unprepared to defend him at trial; and (3) he

---

[1] "An *Alford* plea is a guilty plea in which the defendant pleads guilty while either maintaining [the defendant's] innocence or not admitting having committed the crime." *State v. Garcia*, 192 Wis. 2d 845, 856, 532 N.W.2d 111 (1995) (establishing that Wisconsin courts may accept *Alford* pleas); *see also North Carolina v. Alford*, 400 U.S. 25 (1970). "An *Alford* plea shares characteristics of both a guilty plea and a no contest plea, but it is nonetheless different. Unlike a no contest plea or a guilty plea, a defendant who enters an *Alford* plea maintains [the defendant's] innocence but nonetheless chooses to enter an *Alford* plea knowing the court will enter a judgment of conviction." *State v. Nash*, 2020 WI 85, ¶34, 394 Wis. 2d 238, 951 N.W.2d 404.

The record is inconsistent as to the nature of Taylor's pleas. Before entering the pleas, Taylor told the circuit court that he did not commit two of the charges, apparently referring to the reckless endangerment and possession of a firearm charges. While Taylor subsequently entered "no contest" pleas to each of the three charges, trial counsel and the circuit court stated that he "is entering *Alford* pleas to each of these counts." In the plea questionnaire it states that Taylor will enter *Alford* pleas to all three charges, the boxes for no contest pleas are checked for all three charges, and above Taylor's signature the voluntary plea is listed as "*Alford* plea." In their appellate briefs, the parties refer to the pleas as *Alford* pleas and do not dispute that Taylor entered *Alford* pleas. Accordingly, we refer to the pleas as *Alford* pleas.

is entitled to withdraw his *Alford* pleas because the record fails to demonstrate strong proof of his guilt.

¶2      As to Taylor's first argument, we conclude that the circuit court did not explain the elements of one of the three charges to which Taylor pled, reckless endangerment, and neither the plea questionnaire nor the record as a whole demonstrate that Taylor had an understanding of the nature of that offense.[2]  We further conclude that the plea colloquy and the record demonstrate that Taylor was informed of and understood the elements of the other two charges, possession of a firearm by a felon and failure to comply with an officer's attempt to take person into custody.

¶3      As to Taylor's second and third arguments, we conclude that his subjective belief that his trial counsel was unprepared for trial is insufficient to meet his burden of proving a manifest injustice by clear and convincing evidence; and he fails to show that the circuit court erroneously exercised its discretion in finding that the record demonstrates strong proof of guilt as to each of the three charges.

¶4      Accordingly, and consistent with case law, we reverse the order denying Taylor's motion for plea withdrawal as to the reckless endangerment

---

[2] Courts refer interchangeably to the "nature of the offense" [or crime or charge] and the "elements of the charge [or crime or offense]." *See, e.g.*, *State v. Bollig*, 2000 WI 6, ¶54, 232 Wis. 2d 561, 605 N.W.2d 199 (referring to the defendant's "acknowledgment of the elements contained in the plea questionnaire" as demonstrating the defendant's "aware[ness] of the nature of [the defendant's] offense"); *State v. Bangert*, 131 Wis. 2d 246, 265, 389 N.W.2d 12 (1986) (noting that the circuit "neither recited the elements [of the offense] nor characterized the nature of the crime in a general manner").

charge, and we remand for the circuit court to exercise its discretion in determining the proper remedy in these circumstances.

## BACKGROUND

¶5     Taylor was initially charged with nine counts relating to a shooting and a six-hour standoff with police.  An information subsequently charged Taylor with the following five counts, all as a repeater:   (1) attempted first-degree intentional homicide with use of a dangerous weapon; (2) possession of a firearm by a felon; (3) possession of methamphetamine; (4) possession of drug paraphernalia; and (5) failure to comply with an officer's attempt to take person into custody.

¶6     Following jury selection on the morning of trial, and several discussions off the record between Taylor and his trial counsel, trial counsel informed the circuit court that Taylor had accepted the State's offer of a plea deal.  Specifically, Taylor agreed to enter *Alford* pleas to the first count as amended to reckless endangerment, and to the second and fifth counts of possession of a firearm by a felon and failure to comply with an officer's attempt to take person into custody, all as a repeater.  The State agreed that the charges of possession of methamphetamine and possession of drug paraphernalia, both as a repeater, along with charges in a separate pending criminal case, would be dismissed and read in. The court proceeded with a plea hearing, conducted a plea colloquy, and accepted Taylor's pleas as voluntarily, intelligently, and knowingly entered.

¶7     The circuit court subsequently sentenced Taylor to seven years of initial confinement and five years of extended supervision for reckless endangerment safety, consecutive to the sentences for the other two charges; nine years of initial confinement and five years of extended supervision for possession

of a firearm, concurrent with the sentence for the third charge; and two years of initial confinement and one year of extended supervision for failure to comply, concurrent with the sentence for the second charge.

¶8     Taylor filed a postconviction motion to withdraw his pleas. Taylor argued that his pleas were not knowing because he was not informed of and did not understand the elements of the charges to which he pled, his pleas were not voluntary because he believed that trial counsel was unprepared for trial, and the record did not support a strong proof of guilt of each charge. The circuit court held an evidentiary hearing at which Taylor testified. At the conclusion of the hearing, the court found Taylor's "recollection of the events" not credible and that the court had sufficiently explained the elements of the charges. The court also found that Taylor's trial counsel was prepared for trial and the record conclusively showed strong proof of guilt of each charge. Accordingly, the court denied the motion. Taylor appeals.

## DISCUSSION

¶9     We address each of Taylor's arguments in turn and then address the appropriate relief.

### I.  KNOWING PLEA:  NATURE OF CHARGES

*A.  Applicable Standard of Review and Legal Principles*

¶10    "On appellate review, the issue of whether a plea was knowingly and intelligently entered presents a question of constitutional fact.  [The appellate court] will not upset the circuit court's findings of historical or evidentiary facts unless they are clearly erroneous.  [The appellate court] review[s] constitutional issues independently of the determinations rendered by the circuit court." ***State v.***

***Bollig***, 2000 WI 6, ¶13, 232 Wis. 2d 561, 605 N.W.2d 199 (internal citations omitted).

¶11    A defendant seeking to withdraw a plea after sentencing must "establish by clear and convincing evidence, that failure to allow a withdrawal would result in a manifest injustice." ***State v. Trochinski***, 2002 WI 56, ¶15, 253 Wis. 2d 38, 644 N.W.2d 891.  "A plea which is not knowingly, voluntarily, or intelligently entered is a manifest injustice." ***Id.*** (quoted source omitted).  "One of the situations where plea withdrawal is necessary to correct a manifest injustice is when the plea was involuntary, or was entered without knowledge of the charge." ***Id.***; *see also* ***State v. Garcia***, 192 Wis. 2d 845, 864, 532 N.W.2d 111 (1995) (A defendant is entitled to withdraw a plea after sentencing "as a matter of constitutional right if [the defendant] demonstrates that [the defendant] did not understand the elements of the crimes to which [the defendant] pled."); ***Bollig***, 232 Wis. 2d 561, ¶13 ("A plea violates due process unless the defendant has a full understanding of the nature of the charges against [the defendant].").

¶12    "The standard and procedure for determining whether a plea is knowing, intelligent, and voluntary are laid out in WIS. STAT. § 971.08 and ***State v. Bangert***, 131 Wis. 2d 246, 274, 389 N.W.2d 12 (1986)." ***Trochinski***, 253 Wis. 2d 38, ¶17.  Section 971.08(1) (2029-20)[3] states that a circuit court in accepting a plea must "[a]ddress the defendant personally and determine that the plea is made voluntarily with understanding of the nature of the charge and the potential punishment if convicted."  In ***Bangert***, our supreme court outlined three

---

[3] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

methods that fulfill this obligation. *Garcia*, 192 Wis. 2d at 865 (citing *Bangert*, 131 Wis. 2d at 268). The court described the three methods as follows:

> First, the trial court may summarize the elements of the crime charged by reading from the appropriate jury instructions, or from the applicable statute. Second, the trial judge may ask defendant's counsel whether [counsel] explained the nature of the charge to the defendant and request [counsel] to summarize the extent of the explanation, including a reiteration of the elements, at the plea hearing. Third, the trial judge may expressly refer to the record or other evidence of defendant's knowledge of the nature of the charge established prior to the plea hearing.

*Bangert*, 141 Wis. 2d at 268 (citations omitted). "A defendant's mere affirmative response that [the defendant] understands the nature of the charge, without establishing [the defendant's] knowledge of the nature of the charge," is insufficient to show actual understanding. *Id.* at 269. An "ascertainment of understanding must be made on the record" by the circuit court. *Id.* at 266.

¶13 "If a defendant … shows that the circuit court did not determine on the record at the plea hearing that the defendant understood the nature of the crimes charged, the burden shifts to the State to show by clear and convincing evidence that the defendant's plea was knowingly, voluntarily and intelligently entered." *Garcia*, 192 Wis. 2d at 865 (citing *Bangert*, 141 Wis. 2d at 275). The State may use the entire record in meeting this burden. *Id.* "The [S]tate may examine the defendant or defendant's counsel to shed light on the defendant's understanding or knowledge of information necessary for [the defendant] to enter a voluntary and intelligent plea. The court may also look to the guilty plea questionnaire form signed by the defendant to determine if [the] plea was voluntarily, knowingly and intelligently made." *Id.* at 866 (citations omitted). "In essence, the [S]tate will be required to show that the defendant in fact possessed

the constitutionally required understanding and knowledge ....” ***Bangert***, 131 Wis. 2d at 275. When the State fails to meet this burden, the defendant is “entitled to withdraw [the] plea.” ***Id.*** at 283.

## *B. Additional Background*

¶14    After the jury was selected on the morning of trial, the circuit court and the parties discussed the State’s final plea offer. Taylor’s counsel informed the court that the State’s final offer required that Taylor plead to the first count of reckless endangerment as amended and to the second and fifth counts of possession of a firearm and failure to comply with an officer’s attempt to take person into custody. The court confirmed that the maximum sentence for those counts was twenty-seven years, and that the maximum sentence would be 101 years should Taylor be convicted of the five counts set for trial.

¶15    Taylor and his trial counsel conferred off the record for approximately fifteen minutes, during which time Taylor spoke with his mother by phone and with his girlfriend in person. The circuit court then went back into session and trial counsel informed the court that Taylor would accept the offer and enter ***Alford*** pleas. The proceedings paused while the prosecutor prepared the statement of negotiated plea and amended information, during which time trial counsel confirmed that he had reviewed the plea questionnaire and waiver of rights with Taylor.

¶16    The plea questionnaire that Taylor and his trial counsel signed includes the following statement: “I understand that the crime(s) to which I am pleading has/have elements that the State would have to prove beyond a reasonable doubt if I had a trial. These elements have been explained to me by my attorney or are as follows:  .” The empty space to be filled in after the colon that

8

follows this statement is blank, and there are no jury instructions, statutes, or other documents attached to the questionnaire.

¶17 The prosecutor filed the amended information and the statement of negotiated plea during the pause in the proceedings, after Taylor had conferred with his trial counsel and trial counsel informed the circuit court that Taylor would accept the State's plea offer. The amended information did not contain the elements of the reckless endangerment charge.

¶18 The circuit court reviewed the statement of negotiated plea that Taylor had signed and which set forth the details of the plea agreement: Taylor would enter *Alford* pleas to the amended count of reckless endangerment and to the second and fifth counts of possession of a firearm and failure to comply with an officer's attempt to take person into custody, all as a repeater, and the third and fourth counts of possession of methamphetamine and possession of drug paraphernalia, along with all the charges in a separate case, would be dismissed and read in.

¶19 In response to the circuit court's questions, Taylor confirmed that he had sufficient time to discuss with his counsel and family members before he made his decision to plead. The court next reviewed the plea questionnaire and waiver of rights and confirmed with Taylor that he was thirty-five years old, attended school through the 11th grade, understood English, understood the charges, was currently receiving treatment for a mental illness and seizures, and had taken his medications in the last twenty-four hours. The court did not ask if the medication that Taylor took interfered with his ability to understand the proceedings.

¶20     The circuit court next recited the five counts charged in the amended information and confirmed with Taylor that he knew what each of the charges was and that he reviewed with counsel that each charge would require that the State "prove certain things with evidence beyond a reasonable doubt to convict" him. At the court's request, the prosecutor next recited the facts that the State believed supported Taylor's guilt as to each of the five charges. The court then confirmed that Taylor understood that the recited facts would, if presented to the jury, support a finding of guilt as to each of the three charges to which Taylor agreed to plead, and that the State had the burden of proving beyond a reasonable doubt each element of each of those charges.

¶21     The circuit court next reviewed the constitutional rights that Taylor was waiving by entering his pleas, and explained that if convicted he would not be able to vote during the period of his sentence, would never be able to possess a firearm, and would face certain consequences if he was not a U.S. citizen.

¶22     The circuit court next confirmed with Taylor's trial counsel that he was satisfied that Taylor had freely, intelligently, and voluntarily decided to enter his pleas, and then confirmed with Taylor that he was prepared to enter his pleas.

¶23     The circuit court then turned to the charges to which Taylor agreed to plead. We quote in full the court's remarks as to each charge at this point of the colloquy. As to the first charge, the court stated:

> Count 1 of the Amended Information … reads second degree recklessly endangering safety, use of dangerous weapon, as a repeater. The allegation against you is that on Wednesday, April 5 of 2017, in the City of La Crosse, La Crosse County, Wisconsin you did recklessly endanger the safety of [the victim], contrary to Wisconsin law, a Class G felony for which you would receive a fine of not more than $25,000, imprisonment for not more than ten years, or both, but because you … committed this offense

10

while using a dangerous weapon, the maximum term of imprisonment for the underlying crime is increased by no more than four years; and because you are a repeater, as that term is defined under Wisconsin law, the period of confinement is increased by not more than four years.

The court confirmed with Taylor that he did "understand that crime" and "that penalty."

¶24 As to the second charge, the circuit court stated:

[W]ith regard to Count 2, possession of a firearm by a felon, as a repeater, it's alleged that on the same date, time, and place you did possess a firearm, having been convicted of a felony in this state, a Class G felony for which you would receive a fine of not more than $25,000, imprisonment for not more than ten years or both, but again because you are a repeater, as that term is defined under Wisconsin law, the period of confinement may be increased by no more than four years.

The court confirmed with Taylor that he did "understand that crime and penalty."

¶25 As to the third charge, the circuit court stated:

And Count 5 charges failure to comply with officer's attempt to take person into custody, as a repeater, and the allegation is that on the same date, time, and place as the two previous counts you did intentionally refuse to comply with an officer's lawful attempt to take you into custody and retreated or remained in a building or place, through action or threat attempted to prevent the officer from taking you … into custody, and while doing each of the above, you … remained or became armed with a dangerous weapon or threatened to use a dangerous weapon … [T]hat crime is regardless of whether or not you actually had the gun .…

[T]hat is a Class I felony for which you would receive a fine of not more than $10,000, imprisonment for not more than three years, six months, or both, but again you are a repeater, as that term is defined under Wisconsin law, so the period of confinement can be increased by not more than four years.

11

The court confirmed with Taylor that he did "understand that crime and penalty."

¶26 The circuit court accepted Taylor's pleas, stating that it was "satisfied" that the pleas to the charges were freely, intelligently, and voluntarily made and concluding that there was a sufficient factual basis to support each of the convictions.

¶27 At the postconviction hearing on his plea withdrawal motion, Taylor testified in pertinent part as follows. When he and his trial counsel conferred privately after jury selection, he talked with his counsel for about five minutes and spent the rest of the time talking with his mother by phone. Taylor's trial counsel did not explain to Taylor during the private meeting or at any other time what the elements are of reckless endangerment, possession of a firearm by a felon, or failing to comply with an officer's attempt to take person into custody, and Taylor did not in February 2018 (the month when the plea hearing was held) understand what those elements are. Taylor's trial counsel also did not review with Taylor the plea questionnaire that Taylor signed. Taylor believed that his trial counsel was unprepared for trial.

¶28 The circuit court ruled after hearing Taylor's testimony. The court discredited Taylor's "recollection of the events," rejected Taylor's testimony that his trial counsel was unprepared, and found that there was strong proof of guilt "of a lot more than what [the prosecutor] had offered." Taylor's postconviction counsel asked the court also to rule on Taylor's allegation in his motion "that the record does not demonstrate that the court explained the elements of the offenses … to Mr. Taylor." After hearing additional argument from the prosecutor and postconviction counsel, the court said that it was "satisfied that in taking the plea [it] sufficiently explained to Mr. Taylor what those elements are."

*C. Analysis*

¶29     As stated, "***Bangert*** requires a circuit court to summarize the elements of the offenses on the record, or ask defense counsel to summarize the elements of the offenses, or refer to a prior court proceeding at which the elements were reviewed, or refer to a document signed by the defendant that includes the elements." **State v. Brown**, 2006 WI 100, ¶56, 293 Wis. 2d 594, 716 N.W.2d 906.

¶30     The record as summarized above establishes that the circuit court did summarize the elements of possession of a firearm by a felon and the elements of failing to comply with an officer's attempt to take person into custody, and that Taylor affirmatively indicated that he understood the court's summaries.  Thus, even if his trial counsel did not explain the elements of these two charges, the court did so and Taylor told the court that he understood those two crimes as the court explained them.  This suffices to meet the ***Bangert*** requirement and, accordingly, we reject this basis for granting Taylor's motion to withdraw his pleas to these two charges.

¶31     Taylor argues, generally, that the circuit court "never explained to Taylor the elements of the offenses," but he does not cite to the plea hearing transcript to support this general assertion as to these two offenses — possession of a firearm by a felon and failing to comply with an officer's attempt to take a person into custody.  Nor does Taylor explain how the court's remarks about these two offenses did not include the elements of these offenses.  Therefore, Taylor fails to show that the plea colloquy was defective as to these offenses.

¶32     To the extent Taylor intends to argue that, regardless of whether the plea colloquy was defective, he did not understand the nature of these charges, the record refutes that argument.  Taylor notes that the circuit court did not

13

specifically discredit his testimony about his not understanding the elements of the offenses. However, the court did discredit his "recollection of the events," which includes what transpired during the plea hearing. As stated above, at the plea hearing Taylor did acknowledge that he understood the crimes as described by the court, and those descriptions included the elements of these two offenses. Moreover, his vague testimony that he did not understand the elements "in February 2018" does not suffice to refute the showing in the record that he did understand the elements of these two offenses once the court stated their elements at the plea hearing. In sum, the record negates Taylor's argument that he did not understand the nature of these two charges.

¶33 In contrast, the record establishes that the circuit court did not explain the elements of reckless endangerment, so that when Taylor affirmatively indicated that he understood the crime described by the court, that description did not include the crime's elements. The circuit court stated only the name of the charge and the maximum term of imprisonment for the charge. The court did not recite the elements of the charge, ask Taylor's trial counsel whether counsel explained the nature of the charge or ask trial counsel or Taylor to state the elements at the hearing, or expressly refer to any evidence that Taylor's knowledge of the nature of the charge had been established before the plea hearing.

¶34 The record also establishes that the elements of that charge were not stated on the face of or in any attachments to the plea questionnaire. While the circuit court asked Taylor's trial counsel whether he had the opportunity to discuss the plea questionnaire, the court did not ask whether counsel had the opportunity to discuss what was missing from the plea questionnaire, namely the nature of the charges against Taylor.

14

¶35 In addition, at the motion hearing Taylor testified repeatedly that his trial counsel had not explained the elements of any of the charges and that he did not understand the elements at the time of the hearing. While the circuit court found his "recollection of events" not credible, the court made no such finding as to his testimony about his not understanding at the time of the plea hearing the elements that the court did not itself explain at the plea hearing. Accordingly, Taylor is entitled to withdraw his plea to the reckless endangerment charge. *See Garcia*, 192 Wis. 2d at 864 (A defendant is entitled to withdraw a plea after sentencing "as a matter of constitutional right if [the defendant] demonstrates that [the defendant] did not understand the elements of the crimes to which [the defendant] pled."); *Bollig*, 232 Wis. 2d 561, ¶13 ("A plea violates due process unless the defendant has a full understanding of the nature of the charges against [the defendant].").

¶36 The State does not argue that the plea colloquy was not defective. Rather, the State argues that "the totality of the record" shows that Taylor understood the elements of the offenses. However, the State's argument fails for at least the following reasons. First, the State, like Taylor, does not address the distinctions in the record between the reckless endangerment charge and the other two charges. That is, the State disregards the difference between the circuit court's remarks regarding the reckless endangerment charge and its remarks regarding the other two charges; as stated above, the court recited only the name of the crime and its maximum sentence as to the former, while as to the latter the court recited, in addition to name and maximum sentence, the elements of the crimes. Thus, while Taylor acknowledged that he understood what the court said about each crime and its penalty, what Taylor understood about what the court said about the reckless endangerment charge could not include its elements

because the court did not recite its elements. *See Bangert*, 141 Wis. 2d at 269 ("A defendant's mere affirmative response that [the defendant] understands the nature of the charge, without establishing [the defendant's] knowledge of the nature of the charge," is insufficient to show actual understanding.).

¶37    Second, the State references Taylor's signing of the plea questionnaire, but omits the fact that the plea questionnaire was silent as to the elements of any of the offenses. Similarly, the State references Taylor's affirmative answer to the court's questions: "Each crime would require that the State prove certain things with evidence beyond a reasonable doubt to convict you of those crimes. Did you review those with [your trial counsel]?" This vague reference to proof of "certain things" without more does not suffice to constitute an "ascertainment," or clear and convincing evidence, that Taylor understood the elements of the reckless endangerment offense, despite the court's failure to identify those elements. *See Bangert*, 131 Wis. 2d at 266-67 (an "ascertainment of understanding must be made on the record" by the circuit court); *id.* at 274 (State must show "by clear and convincing evidence that the defendant's plea was knowingly, voluntarily, and intelligently entered, despite the inadequacy of the record").

¶38    Third, the State references the circuit court's finding at the motion hearing that Taylor's trial counsel was a "very practiced attorney" and infers that, because trial counsel conferred with Taylor before Taylor entered his pleas, trial counsel must have reviewed the elements of the offenses with Taylor. However, the record shows that the amended information, which stated the newly amended reckless endangerment charge but did not set forth its elements, was not prepared or filed until after Taylor and his trial counsel had conferred about the State's plea offer. The State's speculative inference is not grounded in any evidence in the

16

record, and does not meet the State's burden of proving "by clear and convincing evidence" Taylor's understanding of the nature of the reckless endangerment charge. *Id.* at 275.

¶39 Finally, the State references two purported "findings" by the circuit court that are not supported by citations to the record or by the record. The State references "the circuit court's finding that Taylor understood the elements of the crimes to which he pleaded" at the plea hearing, but cites no such finding in the transcript of that hearing. The State also asserts that the court found Taylor not "credible" regarding whether Taylor understood the elements of the offenses at the motion hearing, but not only cites no such finding in the transcript of that hearing but also misrepresents the credibility-related finding that the court did make at the hearing. As stated, the court discredited Taylor's "recollection of the events" but did not specifically discredit Taylor's testimony that he did not understand the nature of the charge that the court did not explain at the plea hearing, regarding reckless endangerment. Accordingly, we do not consider further whatever arguments the State intends to make based on these nonexistent "findings." *See State v. McMorris*, 2007 WI App 231, ¶30, 306 Wis. 2d 79, 742 N.W.2d 322 (court of appeals may "choose not to consider … arguments that lack proper citations to the record").

¶40 In sum, we conclude that Taylor did not knowingly and intelligently enter his plea to the first charge of reckless endangerment because the circuit court did not explain, and there is no evidence in the record to show that he understood, the elements of that charge. Because entering a plea without an understanding of the nature of a charge results in a manifest injustice to the defendant, *State v. Giebel*, 198 Wis. 2d 207, 212, 541 N.W.2d 815 (1995); *see also Trochinski*, 253

17

Wis. 2d 38, at ¶16, Taylor is entitled to withdraw his plea to the reckless endangerment charge in order to correct a manifest injustice.

## II.  VOLUNTARY PLEA:  UNPREPARED TRIAL COUNSEL

### A.  *Applicable Standard of Review and Legal Principles*

¶41    Taylor argues that he is entitled to withdraw all three of his pleas as not voluntarily entered because he felt compelled to plead based on his belief that his trial counsel was unprepared to defend him at trial.  A defendant's attorney being unprepared for trial is an issue extrinsic to the plea colloquy that may warrant withdrawal of the defendant's plea.  *State v. Hoppe*, 2009 WI 41, ¶60, 317 Wis. 2d 161, 765 N.W.2d 794.  "[W]hether a plea was entered knowingly, intelligently, and voluntarily is a question of constitutional fact.  We accept the circuit court's findings of historical and evidentiary fact unless they are clearly erroneous.  We independently determine whether those facts demonstrate that the defendant's plea was knowing, intelligent, and voluntary."  *Id.*, ¶61.

### B.  *Additional Background*

¶42    Taylor testified in pertinent part at the evidentiary hearing as follows.  Taylor's trial counsel came to visit him in jail five times, for twenty or thirty minutes each time, and never discussed trial strategy or the facts of the case.  Taylor told trial counsel what happened and that he had nothing to do with the incidents described in the complaint.  Approximately one month before trial, Taylor called a person he believed was from the public defender's office and told him that Taylor wished to dismiss his trial counsel.  Because his attempt to fire his trial counsel failed, Taylor did not think the judge could do anything about it and he did not subsequently tell the judge he was unhappy with trial counsel.  On the

morning of trial, after the State offered the plea deal and the circuit court permitted Taylor and his trial counsel to meet privately to discuss the offer, trial counsel did not discuss strategy or "anything" with him. Because trial counsel was "not doing anything," Taylor felt like he did not have a chance at trial. Taylor's concern that trial counsel was not prepared for trial (when he faced over one hundred years in prison) bore "a little bit" on his decision to plead. Taylor thought that his trial counsel advised him that entering the pleas would be better than going to trial because counsel was not prepared to defend him at trial.

¶43    The circuit court ruled after hearing Taylor's testimony. The court began by saying that its "recollections of the events are not the same as Mr. Taylor's" and that "it was clear that the State had a strong case." The court found that Taylor's trial counsel "was diligent [and] was trying to do the best for Mr. Taylor," was "competent [and] a very practiced attorney." The court expressed its "confidence in [counsel's] abilities."

¶44    The court continued:

> There was no question in my mind that [counsel] was prepared for trial if that's what Mr. Taylor wanted, but clearly with all of the facts as they were known, the offer that [the prosecutor] was making was in [trial counsel's] opinion in the best interest of this defendant. The Court accepted the plea … because [the court] agreed with [trial counsel] based upon all of the evidence and the information the Court had at that time.

¶45    The court concluded that Taylor had not met his burden of proof.

### C. Analysis

¶46    Taylor argues that, because the State did not call his trial counsel to testify at the hearing, Taylor's testimony about his belief that his counsel was

unprepared for trial remains "uncontroverted" and, thus, Taylor established that his pleas were not entered voluntarily. However, Taylor had the burden of proof, and his testimony does not establish that his belief was reasonable or that his trial counsel was unprepared for trial.

¶47 The circuit court found Taylor's "recollection of the events" not credible, thereby nullifying whatever force Taylor's testimony about his contacts with trial counsel might have. The court also found that Taylor's trial counsel both was prepared for trial and reasonably opined that it was in Taylor's best interest to accept the State's offer. Taylor points to no evidence that the court's findings as to counsel's preparedness or the reasonableness of his advice are clearly erroneous. Moreover, and importantly, the record contains no evidence to substantiate Taylor's speculative belief that his trial counsel was not prepared for trial.

¶48 Further undermining Taylor's post-conviction testimony is that he told the circuit court at the plea hearing that he was satisfied with his counsel's performance. Implicitly consistent with that position at the plea hearing, Taylor testified at the postconviction hearing that his then-asserted dissatisfaction with trial counsel was only "a little bit" of his motivation to enter his pleas. In other words, Taylor's then-asserted dissatisfaction was not necessarily the main factor motivating his decision to enter his pleas.

¶49 Accordingly, Taylor has neither shown that his trial counsel was in fact unprepared for trial nor shown that he entered his pleas because he felt his trial counsel was unprepared for trial. Indeed, given the evidence supporting each charge, which is summarized in the next section, and the fact that the pleas reduced Taylor's maximum sentencing exposure from 101 years of imprisonment

20

to twenty-seven years of imprisonment, the court reasonably rejected Taylor's assertion that his speculative belief that his attorney was not prepared for trial motivated him to enter his pleas so as to render his pleas involuntary.

¶50　In sum, Taylor fails to show that his pleas were not voluntarily entered.

## III. STRONG PROOF OF GUILT

### A. *Applicable Standard of Review and Legal Principles*

¶51　"To accept an *Alford* plea, the circuit court must determine that the summary of the evidence the State would offer at trial constitutes strong proof of guilt." *State v. Nash*, 2020 WI 85, ¶35, 394 Wis. 2d 238, 951 N.W.2d 404 (internal quotation marks and quoted sources omitted). Strong proof of guilt is not the equivalent of proof beyond a reasonable doubt, but it is "clearly greater than what is needed to meet the factual basis requirement under a guilty plea." *Id.*, ¶35 (quoting *State ex rel. Warren v. Schwarz*, 219 Wis. 2d 615, 645, 579 N.W.2d 698 (1998)). "We require that the record reflect a strong proof of guilt not to convince the defendant of [the defendant's] guilt; rather, it is constitutionally required to ensure that the defendant is knowingly, intelligently, and voluntarily entering a plea that will result in a judgment of conviction, despite the defendant's claims of innocence." *Id.*

¶52　Before accepting an *Alford* plea, the circuit court must examine the record to determine whether the factual basis established at the plea hearing suffices to substantially negate the defendant's claim of innocence. *Id.*, ¶36. "[T]he circuit court must find strong proof of guilt for each element of the alleged crime." *Id.* "Accordingly, to accept an *Alford* plea, the circuit court looks at the

21

record as a whole and determines whether the facts in the record show a strong proof of guilt as to each element of the alleged crime." ***Id.***

¶53 Whether the record shows a strong proof of guilt in a particular case is a discretionary determination by the circuit court based on the facts and circumstances of that case. ***Id.***, ¶38. A factual basis may be established through the prosecutor's recital of evidence, a prosecutor's reading of police reports or statements of evidence, or witnesses' testimony. ***Id.***

*B. Analysis*

Second-degree recklessly endangering safety with a dangerous weapon:

¶54 For the circuit court to accept a defendant's ***Alford*** plea to second-degree recklessly endangering safety with a dangerous weapon, there must be strong proof of guilt that: (1) "[t]he defendant endangered the safety of another human being," (2) by "criminally reckless conduct," (3) while possessing, using or threatening to use a dangerous weapon. WIS. STAT. §§ 941.30(2) and 939.63(1); WIS JI—CRIMINAL (2015). Regarding the second element, "criminally reckless conduct," the State must show "an unreasonable and substantial risk of death or great bodily harm," and that the defendant "is aware of that risk." WIS. STAT. § 939.24(1).

¶55 At the circuit court's request, the prosecutor summarized the evidence that the State would present to show Taylor's guilt, as follows. Two officers were surveilling a house when they saw two men walk up to the doorway, the door open, and the men running away, and when the officers heard shots being fired they saw one of the men get hit. The other man who ran away would testify that he and the man who was subsequently shot walked to the door to buy "weed"

and that he (the man who was not shot) had a gun with him. When the door opened he saw a person that he does not know wearing dreadlocks with blond tips and with a distinctive tattoo on his face. Those were characteristics shared by Taylor. He saw the man shoot a gun at them and he ran away; he also saw someone else in the house up the stairs. Seconds after the shooting, one of the surveillance officers saw a man who is not Taylor in the upstairs window, indicating that that man was not the shooter.

¶56     In addition, Taylor was not excluded as a source of the DNA found on the gun that was located after the shooting under a stove in the kitchen of the residence where the shooting occurred and Taylor was ultimately detained. Following his detention, Taylor's DNA was positively identified on the magazine that was with the gun. The ballistics evidence would show that that gun was the gun that was used by the shooter who fired the bullet that ended up in the leg of the man who ran away, and that the gun carried by the other man who ran away was not the gun used in the shooting. Also, one gun shell casing was found in the toilet in the residence Taylor was in, and the location of the gun, the casings, and the toilet indicated that the person who hid the gun and placed the casing in the toilet would have been Taylor because he stayed in the residence while the residence was surrounded by officers during the six-hour stand-off that followed the shooting.

¶57     Officers also detained a man who they saw jump out of the second-floor window. That man, who may or may not have testified at trial, gave a statement that he was upstairs, Taylor did the shooting, and he then jumped out the window.

23

¶58 The circuit court determined at the conclusion of the plea hearing that "there is a sufficient factual basis to support" the conviction, and determined at the conclusion of the postconviction motion hearing that "the factual basis presented strong proof" of Taylor's guilt.

¶59 We conclude that the above-summarized evidence constitutes strong proof of guilt of each element of the offense: Taylor was identified as the man who intentionally fired the gun used in the incident at two men who came to the door and then fled from the residence, thereby endangering their safety by conduct showing an unreasonable and substantial risk of death or great bodily harm under the circumstances, with awareness of that risk, using a gun that he later hid.

¶60 Taylor argues that the evidence could be viewed differently, that someone else in the residence could have been the shooter despite his having hair and a tattoo like that of the shooter, and that since one of the men at the door had a gun Taylor did not unreasonably respond but instead reasonably believed he was going to be robbed. However, Taylor's view of the evidence finds little support in the evidence summarized above. In any event, his assertion that the evidence could be viewed differently fails to show that the circuit court erroneously exercised its discretion in finding that the record contains strong poof of guilt as to each element of this charge.

Possession of a firearm by a felon:

¶61 For the circuit court to accept a defendant's *Alford* plea for possession of a firearm by a felon, there must be strong proof of guilt that: (1) "[t]he defendant possessed a firearm," and (2) the defendant had been convicted of a felony prior to possessing the firearm. WIS. STAT. § 941.29(1m); WIS JI—CRIMINAL 1343 (2021).

¶62     As to the first element, the prosecutor summarized the following evidence for the circuit court:  (1) prior to Taylor's being arrested, a picture was posted on Facebook about one month before the shooting of Taylor in the residence where the shooting took place, holding a gun that "looks to be" the same gun that was found underneath the stove in the residence at which Taylor was taken into custody on the day of the shooting; (2) Taylor's DNA was found on the magazine that was wrapped in a towel with the gun under the stove in the residence; and (3) Taylor shot one of the men as they fled the residence, indicating that Taylor possessed a gun at the time of the shooting.  As to the second element, Taylor was convicted of possession with intent to deliver heroin prior to possessing the firearm in this case.

¶63     Taylor attempts to downplay the probative force of the Facebook photograph.  However, his different view of this piece of evidence fails to show that the circuit court erroneously exercised its discretion in finding that all of the above-stated evidence provides strong proof of guilt as to each element of this charge.

Failure to comply with officer's attempt to take person into custody:

¶64     Taylor does not in his initial appellate brief address whether the record contains strong proof of guilt as to the charge of failure to comply with an officer's attempt to take person into custody.  While he states that he does not concede this issue, we can take his failure to argue the issue as his abandoning it.  *See State v. Ledger*, 175 Wis. 2d 116, 135, 499 N.W.2d 198 (Ct. App. 1993) ("On appeal, issues raised but not briefed or argued are deemed abandoned.").  Nevertheless, for the sake of completeness, we explain that the record does contain strong proof of guilt as to this charge.

25

¶65 For the circuit court to accept a defendant's *Alford* plea for failure to comply with an officer's attempt to take a person into custody there must be strong proof of guilt that: (1) the defendant intentionally refused to "comply with an officer's lawful attempt to take [the defendant] … into custody;" (2) the defendant either retreated into or remained in a premise and through either action or threat attempted to prevent an officer from taking [the defendant] into custody; and (3) the defendant was armed with a "dangerous weapon or threaten[ed] to use a dangerous weapon." WIS. STAT. § 946.415(2); WIS JI—CRIMINAL 1768 (2008).

¶66 As to all three elements, the State summarized the following evidence. After the shooting, police locked down the apartment building and communicated with Taylor through phone call, text message, and public address system while he was in the residence for approximately six hours and was in possession of the gun that police subsequently located under the stove. At times Taylor said that he was in a different location and that he was perhaps suicidal. Eventually, the police used a combination of tear gas and robots to enter the residence, where they found Taylor hiding in a bathtub, and removed they him from the residence.

¶67 Our review of the record demonstrates that the circuit court did not erroneously exercise its discretion in finding that the record contains strong poof of guilt as to each element of this charge.

¶68 In sum, we conclude that Taylor has failed to demonstrate a manifest injustice entitling him to withdraw his *Alford* pleas for lack of a strong proof of guilt as to the elements of the offenses.

## IV.  REMEDY ON REMAND

¶69     Taylor argues, without citation to legal authority, that if we conclude that he is entitled to withdraw his plea to one of the charges, we "will also have to vacate" the pleas to the remaining charges "because the plea was entered in reliance on the totality of the plea agreement."  The State does not respond to this argument.  As we explain, the law requires that, under the circumstances of this case, we remand to the circuit court to exercise its discretion to determine the appropriate remedy.

¶70     We have concluded that Taylor has established a manifest injustice entitling him to withdraw his plea to reckless endangerment.  This court has summarized the law addressing the remedy in such a situation as follows:

> "Wisconsin law clearly holds that a defendant's repudiation of a portion of the plea agreement constitutes a repudiation of the entire plea agreement.'" *State v. Lange*, 2003 WI App 2, ¶32, 259 Wis. 2d 774, 656 N.W.2d 480 (2002).    Ordinarily,   the   remedy   for   a   defendant's repudiation is to vacate the entire plea agreement and reinstate the original charges against the defendant. *Id.*; *see also* *State v. Robinson*, 2002 WI 9, ¶48, 249 Wis. 2d 553, 638 N.W.2d 564, *abrogated on other grounds by State v. Kelty*, 2006 WI 101, 294 Wis. 2d 62, 716 N.W.2d 886. However, the appropriate remedy in a given case depends on the totality of the circumstances.  *Robinson*, 249 Wis. 2d 553, ¶48.  Accordingly, a court must "examine all of the circumstances of a case to determine an appropriate remedy for that case, considering both the defendant's and the State's interests." *Id.*
>
> We review a circuit court's discretion of remedy when faced with a motion to withdraw all or part of a plea agreement   using   the   erroneous   exercise   of   discretion standard of review. *State v. Roou*, 2007 WI App 193, ¶13, 305 Wis. 2d 164, 738 N.W.2d 173.

*State v. Bowser*, No. 2018AP313-CR, unpublished slip op. ¶¶10-11 (WI App Jan. 8, 2019).[4]

¶71    In *Roou*, we emphasized that returning the parties to their pre-plea positions "is not the mandated remedy as a matter of law when convictions are based on a negotiated plea agreement and an error later surfaces as to one count." *Roou*, 305 Wis. 2d 164, ¶26.  We concluded that it is within the circuit court's discretion to determine "[i]f another available remedy better addresses both the circumstances of the case and the interests of the parties." *Id.*  The circumstances and interests considered by the court in *Roou* included the reduction of charges and maximum prison exposure resulting from the plea agreement; the effect of the partial plea withdrawal on the ultimate sentence; whether the failure to explain the elements of one charge was material to the other charges; whether the sentences on the other charges were unchanged by a partial plea withdrawal; whether all charges could be refiled, exposing the defendant to a trial or additional prison time; and whether the defendant showed a serious flaw in the fundamental integrity of the pleas to the other charges.[5]  *See id.*, ¶¶23, 26.

¶72    Consistent with *Roou*, we remand to the circuit court to exercise its discretion to determine whether to permit Taylor to withdraw from the entire plea

---

[4] *See* WIS. STAT. RULE 809.23(3)(b) (permitting the citation of authored, unpublished opinions issued after July 1, 2009, for their persuasive value).

[5] Here, Taylor's pre-plea maximum sentence totaled 101 years of imprisonment; his sentence after entering his pleas totaled sixteen years of initial confinement and ten years of extended supervision; and his sentence after the withdrawal of the reckless endangerment charge only will total nine years of initial confinement and five years of extended supervision.  Should the State reinstate the reckless endangerment charge or any previous charges, that will increase Taylor's maximum sentence exposure.

agreement based on "the totality of the circumstances and a consideration of the parties' interests." *Id.*, ¶1.

## CONCLUSION

¶73   For the reasons stated, we conclude that Taylor is entitled to withdraw his plea to reckless endangerment, but that Taylor fails to show that the circuit court erred in denying his motion to withdraw his pleas to possession of a firearm and failure to comply with an officer's attempt to take person into custody. Accordingly we reverse the court's order denying Taylor's motion to withdraw his pleas and remand to the circuit court to determine an appropriate remedy on remand.

*By the Court.*—Judgment reversed in part; order reversed and cause remanded for further proceedings.

Not recommended for publication in the official reports.